UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant,

                Plaintiff,                  No. 07 Civ. 4711 (TPG)

    -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                Defendant.
———————————————————————x


## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT


PARTNERSHIP FOR CHILDREN'S RIGHTS
WARREN J. SINSHEIMER (WS 9906)
MICHAEL D. HAMPDEN (MH 2359),
    of Counsel
Attorneys for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999, ext. 222

ERIN K. McCORMACK, Esq.
  on the Memorandum of Law

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                          1

PROCEDURAL HISTORY                                            1

STATEMENT OF FACTS                                           2

LEGAL STANDARDS                                              2

SUMMARY OF ARGUMENT                                         4

ARGUMENT                                                    4

### Point I

**WINSTON PREPARATORY SCHOOL WAS AN APPROPRIATE
PLACEMENT FOR ROBERT FOR THE 2006–2007 SCHOOL YEAR**
                                                            4

A.  The Standard for Appropriateness of a Unilateral Private Placement.   4

B.  At the Impartial Hearing, Plaintiff Satisfied Her Burden of Proving
That WPS Was an Appropriate Placement for Robert.             6

    1.  The Testimonial and Documentary Evidence Plaintiff
Introduced at the Impartial Hearing Clearly Demonstrated
that WPS Was an Appropriate Placement for Robert.            6

    2.  The IHO Erred in Failing to Find that WPS Was an
Appropriate Placement for Robert.                           10

    3.  The SRO Erred in Finding that Plaintiff Failed to Satisfy
Her Burden of Proving that WPS Was an Appropriate
Placement for Robert.                                       13

C.  The Additional Evidence Submitted Herewith Further Demonstrates
That WPS Was an Appropriate Placement.                       14

## Point II

**THERE HAS BEEN NO FINAL ADJUDICATION ON THE MERITS AT THE IHO LEVEL OF PLAINTIFF'S CLAIM FOR TUITION PAYMENT. CONSEQUENTLY, PLAINTIFF IS NOT BARRED FROM LITIGATING THIS CLAIM IN A SECOND IMPARTIAL HEARING.**

17

**A. The IHO's Decision Dismissing Plaintiff's Claim Without Prejudice Was Not a Final Judgment on the Merits and Therefore Has No Res Judicata Effect.**                                                           17

**B. It Was Within the IHO's Authority to Dismiss Plaintiff's Claim for Tuition Payment Without Prejudice.**                                          19

    **1. The IDEA and Its Implementing Regulations Afford IHOs Discretion in Procedural Matters.**                                   19

    **2. New York State Civil Procedure Supports the IHO's Decision to Dismiss Plaintiff's Claim Without Prejudice.**                  21

    **3. The Finality Provision of the IDEA Does Not Bar the Dismissal of Plaintiff's Claim Without Prejudice.**                          23

**C. Even Assuming, Arguendo, That the IHO Lacked the Authority to Dismiss Plaintiff's Claim Without Prejudice, the SRO Should Have Remanded the Case to the IHO to Reach a Final Determination on the Merits.**                                                              25

## Point III

**THIS COURT SHOULD EXERCISE ITS EQUITABLE POWER UNDER THE IDEA TO GRANT PLAINTIFF RELIEF AND EFFECTUATE ROBERT'S RIGHT TO A FAPE**

27

**CONCLUSION**                                                              30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant.,                                    **No. 07 CV 4711 (TPG)**

                                    Plaintiff,             **MEMORANDUM OF LAW IN**
                                                           **SUPPORT OF MOTION FOR**
                    -against-                              **SUMMARY JUDGMENT**

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                                    Defendant.
————————————————————————X

## PRELIMINARY STATEMENT

Gloria Rodriguez (Plaintiff) commenced this action pursuant to the Individuals with Disabilities Act (IDEA), reenacted as the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C.A. § 1415(i)(2)(A) (Supp. 2005), seeking reversal of a final administrative decision by the New York State Review Office (SRO) denying her claim for payment of her son's tuition at Winston Preparatory School (WPS) during the 2006–2007 school year.

## PROCEDURAL HISTORY

Plaintiff filed an impartial hearing request on August 18, 2006, seeking an order directing the New York City Department of Education (DOE) to pay for her son's tuition at WPS for the 2006–2007 school year. <u>See</u> Exh. A.[1] On October 23, 2006, the Impartial Hearing Officer (IHO) denied Plaintiff's claim for payment of the WPS tuition without prejudice. <u>See</u> Exh. D.

Plaintiff filed a second impartial hearing request on October 27, 2006, seeking payment of the WPS tuition for the 2006–2007 school year. <u>See</u> Exh. P. On November 17, 2006, the DOE moved to dismiss Plaintiff's second impartial hearing request on res judicata grounds. <u>See</u> Exh. Q.

---

[1] Citations in this format ("Exh. ___") are to the exhibits submitted with this motion.

On November 26, 2006, the DOE appealed the first IHO's decision to the SRO to the extent that it rendered the dismissal of Plaintiff's claim without prejudice. See Exhs. L, O. Plaintiff cross-appealed the decision to the extent that the IHO refused to find that WPS was an appropriate placement for Robert and denied Plaintiff payment of the WPS tuition. See Exh. M.

On February 9, 2007, the SRO sustained the DOE's appeal, dismissed Plaintiff's cross-appeal, and annulled the IHO's decision to the extent that it ordered dismissal without prejudice. See Exh. O. On February 15, 2007, the second IHO dismissed Plaintiff's October 27, 2006 impartial hearing request based on the SRO's decision. See Exh. T. Plaintiff appealed the SRO's decision to this Court on June 4, 2007 and herein moves for summary judgment.

## STATEMENT OF FACTS

We respectfully refer the Court to the Complaint, Plaintiff's Rule 56.1 Statement, and the attached affidavits of Warren Sinsheimer, Gloria Rodriguez, and Susan Feldman for a statement of the facts of this case.

## LEGAL STANDARDS

The IDEA is designed to ensure that all children with disabilities are provided with a free appropriate public education (FAPE). See 20 U.S.C.A. § 1400(d)(1)(A) (Supp. 2005); Schaffer v. Weast, 546 U.S. 49, 51 (2005). In order to satisfy the requirements of the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C.A. § 1401(9), that are "reasonably calculated to enable the child to receive educational benefits," Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982), and provided in the least restrictive environment that meets the child's educational needs, see § 20 U.S.C.A. § 1412(a)(5)(A). The school district must have an Individualized Education Program (IEP) in place for each student

with a disability at the beginning of the school year and review that IEP not less than annually. See 20 U.S.C.A. §§ 1414(d)(2)(A), (d)(4)(A)(i).

Under the standard set forth by the United States Supreme Court in School Committee of Burlington v. Department of Education, 471 U.S. 359 (1985), a board of education may be required to pay for educational services obtained by a parent for his or her child if: (1) the services offered by the board were inadequate or inappropriate; (2) the services obtained by the parent were appropriate; and (3) equitable considerations support the parent's claim. Id. at 370, 374. When the three Burlington prongs are satisfied, parents who have unilaterally placed their child in a private school may obtain reimbursement for the cost of the private school tuition. See Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 12 (1993); Burlington, 471 U.S. at 369.

Parents seeking payment for the cost of a unilateral private placement must first litigate their claim in an impartial due process hearing. See 34 C.F.R. §§ 300.507–13, 516 (2007). In two-tiered states like New York, in which impartial hearings are conducted at the school district level, the decisions reached in these hearings are subject to State-level appeals—in New York, appeals to the SRO. See 34 C.F.R. § 300.514(b); 8 N.Y.C.R.R. § 200.5(k) (2007). Once these administrative remedies have been exhausted, either party—the parent or the school district—may seek independent judicial review in the state or federal courts. See 34 C.F.R. § 300.516.

In IDEA cases, the court reviews the record de novo, under a preponderance of the evidence standard. Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007). The court gives "due weight" to administrative rulings based on educational policy, see Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998), and to those findings of fact supported by evidence in the record, see Gagliardo, 489 F.3d at 113. No deference is given to administrative rulings on pure questions of law. Lillbask v. Conn. Dep't. of Educ., 397 F.3d 77, 82 (2d Cir. 2005).

## SUMMARY OF ARGUMENT

Plaintiff proved at the impartial hearing that WPS was an appropriate placement for Robert, satisfying her burden under the second Burlington prong and entitling her to payment of the WPS tuition. The additional evidence submitted with this motion provides further proof that WPS was an appropriate placement for Robert and demonstrates that he made progress at WPS during the 2006–2007 school year. Consequently, this Court should overturn the decision of the SRO and award Plaintiff payment of the WPS tuition for the 2006–2007 school year. (**Point I**)

In the alternative, this Court should (1) find that it was an appropriate exercise of discretion for the IHO to dismiss Plaintiff's claim without prejudice and authorize Plaintiff to pursue her claim for payment of the WPS tuition in a second impartial hearing; or (2) remand the case to the IHO to conduct further fact-finding on the issue of Robert's progress at WPS and reach a decision on the merits of Plaintiff's claim for payment of the WPS tuition. (**Point II**)

Granting Plaintiff relief in this case is an appropriate exercise of the Court's broad equitable powers under the IDEA. (**Point III**)

## ARGUMENT

## POINT I

## WINSTON PREPARATORY SCHOOL WAS AN APPROPRIATE PLACEMENT FOR ROBERT FOR THE 2006–2007 SCHOOL YEAR

A.    **The Standard for Appropriateness of a Unilateral Private Placement**.

In order to obtain tuition payment under Burlington, parents must demonstrate the appropriateness of the private school in which they have placed their child.[2] An appropriate

---

[2] In this case, the IHO found that the DOE failed to offer Robert a FAPE for the 2006–2007 school year and that equitable considerations support Plaintiff's tuition claim. See Exh. D at 7, 9. The DOE did not appeal those decisions on the first and third Burlington prongs. See Exh. L ¶ 63. Consequently, those portions of the IHO's decision are final. See 34 C.F.R. § 300.514(a); 8 N.Y.C.R.R. § 200.5(j)(5)(v); Application of the N.Y. City Dep't of Educ., Appeal No. 07-037, at 3 n.3 ("An impartial hearing officer's decision is final and binding

4

school is one that provides services "proper under the Act" <u>Carter</u>, 510 U.S. at 15; <u>Burlington</u>, 471 U.S. at 370, i.e. "one that is 'likely to produce progress, not regression,'" <u>Gagliardo</u>, 489 F.3d at 112 (<u>quoting</u> <u>Walczak v. Florida Union Free Sch. Dist.</u>, 142 F.3d 119, 130 (2d Cir. 1998)).

The private school need not meet the IDEA definition of a FAPE, formulate an IEP for the student, or provide the student with teachers certified in special education. <u>Frank G. v. Bd. of Educ.</u>, 459 F.3d 356, 364 (2d Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 436 (2007). In addition, "parents seeking an alternative placement may not be subject to the same mainstreaming requirements as a school board." <u>M.S. v. Bd. of Educ.</u>, 231 F.3d 96, 105 (2d Cir. 2000).

Subject to those exceptions, "the same considerations and criteria that apply in determining whether the School District's placement is appropriate should be considered in determining the appropriateness of the parents' placement." <u>Frank G.</u>, 459 F.3d at 364. "[T]he parents should not be held to a higher standard than the school district." <u>C.B. v. N.Y. City Dep't of Educ.</u>, No. 02 CV 4620(CLP), 2005 WL 1388964, at *16 (E.D.N.Y. June 10, 2005); <u>see also id.</u> ("[I]f anything, the standard applied to determine the appropriateness of parental placements is less restrictive and subject to fewer constraints than that applied to the school authorities.").

Ultimately, "[t]he IDEA does not require the parents to provide an 'ideal program,' just an 'appropriate' one." <u>C.B.</u>, 2005 WL 1388964, at *24; <u>see also</u> <u>Warren G. v. Cumberland County Sch. Dist.</u>, 190 F.3d 80, 84 (3d Cir. 1999) (test for a parental placement "is that it is appropriate, and not that it is perfect").

---

upon the parties unless appealed to the State Review Officer. Consequently, that part of the [IHO's] decision that was not appealed is final and binding." (citations omitted)).

**B.**     <u>At the Impartial Hearing, Plaintiff Satisfied Her Burden of Proving That WPS Was an Appropriate Placement for Robert.</u>

       **1.**     **The Testimonial and Documentary Evidence Plaintiff Introduced at the Impartial Hearing Clearly Demonstrated that WPS Was an Appropriate Placement for Robert.**

At the impartial hearing conducted on October 4, 2006, Plaintiff satisfied her burden of proving that WPS was an appropriate placement for Robert. Plaintiff testified on her own behalf at the hearing and, through her attorney, offered seven documents into evidence. <u>See</u> Exhs. E–K. Beth Sugarman, WPS's Director of Operations and Educational Research,[3] also testified on Plaintiff's behalf. <u>See</u> Exh. B at 17. This testimonial and documentary evidence clearly showed that WPS was an appropriate placement for Robert, satisfying Plaintiff's prong-two burden and entitling her to payment of the WPS tuition under <u>Burlington</u>.

WPS is a private school for special education students that, at the time of the hearing, had been in existence for twenty-six years. Exh. B at 17–18. Each of the students at WPS has a documented learning disability, yet 98% of WPS students graduate and go on to college. <u>Id.</u> at 17. One of the primary means through which WPS addresses students' learning difficulties is its Focus Program—a "skills-based program" in which "each student receives one-to-one remediation and is paired with a specialist based upon their particular learning profile." <u>Id.</u> at 19. In addition, WPS "group[s] students based upon their learning profile so that [they are taught] to their strengths as well as to their weaknesses." <u>Id.</u> at 17.[4]

---

[3] Ms. Sugarman is a speech and language pathologist with a Masters Degree from Columbia University Teachers College. Exh. B at 17. In her capacity as Director of Operations and Educational Research, she is responsible for overseeing the placement of students at WPS—ensuring that students are "placed in an appropriate group based upon a learning profile as well as testing incoming students and current students." <u>Id.</u> At the time of the hearing, Ms. Sugarman had worked at WPS for nine years. <u>Id.</u>

[4] Robert was interviewed at WPS and observed in a classroom prior to his admission to the school. Exh. B at 12. Also prior to his admission, WPS's admissions director evaluated Robert using standardized academic tests. <u>Id.</u> at 21–22.

At the hearing, Ms. Sugarman described Robert's special education needs and explained how WPS was meeting those needs. According to Ms. Sugarman, Robert has a nonverbal learning disorder characterized by "difficulty with more abstract thinking"—he has "difficulty with making connections" and is a "very concrete learner." Id. at 20. Robert also has difficulties "across the board" in reading comprehension, listening comprehension, and mathematics and presented to WPS with "low-functioning" academic skills. Id. As a result, Robert "needs a lot of repetition in order to understand information," id. at 18, and requires "information to be presented slowly and broken down for him on a consistent basis." Id. at 19.

Ms. Sugarman's description of Robert's special education needs is consistent with the results of the DOE's September 19, 2005 psychoeducational evaluation. See Exh. G at 2–3 (reporting that Robert, then a fifth-grade student, scored at the 2.4 grade level in reading fluency and the 2.1 grade level in story recall); id. at 2 ("Robert tends to process information slowly and he has trouble with sustaining his performance"); id. at 4 ("[Robert] has difficulty picking up on salient details in problems and tasks. . . . Oral language and auditory comprehension are both below expectancies."); id. at 3 (opining that Robert "would do best" with "directions written and administered orally as well as instructions repeated"); see also Exh. E at 12 (indicating that "Robert has deficits in language processing, attention and focusing ").

Ms. Sugarman testified unequivocally that WPS was an appropriate placement for Robert. Exh. B at 18. In order to address Robert's special education needs, WPS placed him in a class of twelve students, all with similar learning profiles, taught by teachers certified in special education.[5] Id. at 17, 19–20, 22. In this small-class setting, Robert received specialized

---

[5] Ms. Sugarman testified that all of Robert's classes had twelve students, except for his math class, which had between ten and twelve students. Exh. B at 22. Each class was taught by one teacher. Id. at 20. On October 30, 2006, WPS, finding that it had an extra teacher, split Robert's 12:1 class into two classes of six students,

instruction designed to meet his special education needs:  Robert's teachers worked with him on "vocabulary, comprehension, . . . more abstract reasoning type[s] of abilities" in order to address his difficulties with "conceptual understanding and critical thinking." Id. at 18.  The small class size also provided Robert with the much-needed opportunity to "have information broken down" for him," id. at 20, and allowed him to become "comfortable . . . with raising his hand and participating in class," id. at 18.[6]

This small, self-contained special education class was a critical special education program element Robert otherwise would have been denied by virtue of the DOE's failure to provide him with a school placement for the 2007–2008 school year. See Exh. E at 1 (Oct. 7, 2005 IEP recommending placement in special education class with 12:1:1 staffing ratio).  This is strong evidence that WPS was an appropriate placement for Robert. See Frank G., 459 F.3d at 365 (holding that small class size falls within IDEA definition of "special education" and constituted "one element of the special education services necessary to address a significant deficiency in the inappropriate public school placement the School District offered [the student]").

In addition to a self-contained special education class placement, WPS provided Robert with forty minutes per day of one-to-one instruction with a reading specialist through its Focus Program.  Exh. B at 19.  WPS's decision to match Robert with a reading specialist, rather than another type of instructor, was based on its individualized assessment of his special education needs and its determination that he needed to "develop his comprehension and decoding

---

each with one teacher.  WPS made this change "in order to more closely tailor the instruction to the students' individual needs." Feldman Aff. ¶ 11.

[6] This was clearly an area of need for Robert. Cf. Exh. G at 1 ("[Robert] related in a shy somewhat withdrawn manner and spoke in such a low tone that it was difficult to hear him unless you continually asked him to speak up."); id. at 2 ("Difficulties with self esteem and feelings of inadequacy impact on [Robert's school] functioning. He is a youngster who is fearful of making errors and receiving criticisms. He needs a great deal of reassurance to take chances due to underlying feelings of vulnerability and insecurity.").

abilities." Id. at 24. As Ms. Sugarman explained, Robert's reading specialist "target[ed] more specifically vocabulary skills, comprehension skills, based upon Robert's particular strengths, weaknesses and scaffolding from what t[ook] place throughout the curriculum to further develop skills and abilities." Id. at 19.

This is precisely the type of individualized instruction, tailored to meet a student's unique special education needs, that satisfies the Rowley standard. See Gagliardo, 489 F.3d at 115 (emphasizing that appropriate unilateral private placement must "provide[] 'education instruction *specifically* designed to meet the *unique* needs of a handicapped child'" (quoting Frank G., 459 F.3d at 365 (in turn quoting Rowley, 458 U.S. at 188–89)) (emphasis in Gagliardo)). Moreover, Robert clearly benefited from his Focus sessions, as, after only one month at WPS, he was observed to be less shy, "more comfortable admitting when things [were] difficult for him" and more willing to participate in instruction. Exh. B at 19.

WPS also provided Robert with instruction designed to address his speech and language impairment, including his difficulties with "[o]ral language and auditory comprehension" and "difficulty picking up on salient details in problems and tasks." Exh. G at 4. Ms. Sugarman explained that students with language impairments "need a tremendous amount of repetition," so WPS teachers repeat "at the onset of every class" information about what they taught the day before. Exh. B at 20. The teachers also "break . . . information down into visual presentations as well as auditory presentations" and provide students with "semantic maps [or] outlines . . . to help them understand information more clearly." Id. at 20–21. And in order to address the students' vocabulary weaknesses, WPS teachers provide instruction on how students can "use context clues . . . to improve their understanding of language." Id. at 20.

Plaintiff testified that Robert underwent an "amazing" change once he began attending WPS, id. at 8, becoming "like . . . another child," id. at 7. She explained that before Robert attended WPS, he did not understand his teachers and found academic work very frustrating. See id. at 7, 10. Robert experienced "so much stress" that he would "cry every morning" when he had to go to school. Id. at 7. At WPS, by contrast, Robert was "happy." Id. His teachers took time to explain things to him, and he was able to understand the teachers, the academic material, and his homework. See id. at 7–8, 10. Robert told his mother, "'You are my hero, Mom, because you found me a school.'" Id. at 7.

### 2.     The IHO Erred in Failing to Find that WPS Was an Appropriate Placement for Robert.

Despite the clear evidence of WPS's appropriateness Plaintiff introduced at the impartial hearing, the IHO failed to find in Plaintiff's favor on the second Burlington prong. This decision is not supported by the factual record, and it should not be upheld by this Court.

The IHO refused to find in Plaintiff's favor on prong two based on an erroneous legal conclusion—that parents must demonstrate that their child has made progress at the unilateral private placement in order to qualify for tuition payment under Burlington. The Second Circuit Court of Appeals has declared, "Grades, test scores, and regular advancement *may* constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the *totality of the circumstances* in determining whether that placement reasonably serves a child's individual needs." Frank G., 459 F.3d at 364 (emphasis added); see also Gagliardo, 489 F.3d at 115 (cautioning that "a child's progress [in a unilateral private placement] is relevant to the court's review," but "such progress does not itself demonstrate that a private placement was appropriate").

10

In her decision, the IHO cited Frank G. and correctly stated: "[I]t is the parent's burden to show that the placement that she has chosen is designed to provide *or* is providing meaningful educational benefit." Exh. D at 8 (emphasis added). However, immediately thereafter the IHO indicated that, without proof that Robert had made "tangible progress" at WPS, Plaintiff could not prevail on her tuition claim. See id. at 8–9. The IHO faulted Plaintiff for "offer[ing] no documentary evidence and no testimony from [Robert's] teachers about the child's progress," while correctly noting that Robert had "not been in the placement long enough to make such an assessment." Id. at 8. The decision clearly states that this lack of proof of educational progress was "critical to [the IHO's ] determination" not to rule in Plaintiff's favor on the second Burlington prong. Id.

Under the "totality of the circumstances" of Plaintiff's case, it was error for the IHO to require proof of educational progress at WPS. Plaintiff is and was a low-income parent who went to an impartial hearing at the beginning of the school year seeking prospective payment of the WPS tuition based on the DOE's conceded failure to offer Robert a FAPE. See Exh. B at 8; Exh. D at 9. At the time of the hearing, Plaintiff was not in a position to submit "tangible proof" that Robert had progressed at WPS, but she submitted ample evidence demonstrating that WPS's academic program was designed to meet Robert's individual special education needs and reasonably calculated to provide him with educational benefits.

This evidence was sufficient to satisfy the Rowley standard, and to entitle Plaintiff to payment of the WPS tuition. See Frank G., 459 F.3d at 364 ("[T]he issue turns on whether a placement—public or private—is 'reasonably calculated to enable the child to receive educational benefits.'" (quoting Rowley, 458 U.S. at 207)). Plaintiff should not have been "held to a higher standard than the school district." C.B., 2005 WL 1388964, at *16.

Notably, the IHO failed to discuss Plaintiff's "Rowley" evidence in her decision. For example, the IHO faulted Ms. Sugarman for "not giv[ing] any meaningful testimony regarding the child['s] academic progress," Exh. B at 8, but did not discuss Ms. Sugarman's testimony regarding the specifics of WPS's academic program and how that program was designed to meet Robert's individual special education needs—evidence that included testimony about Robert's placement in a small, self-contained special education class and receipt of daily, one-to-one instruction with a reading specialist through the Focus Program.

The IHO also incorrectly concluded that Robert "should [have been], but ha[d] not been offered, speech and language therapy as part of his educational program" at WPS. Exh. D at 9. First, it was not necessary for WPS to provide Robert with speech and language therapy simply because it was recommended on his October 9, 2005 IEP—an IEP that, incidentally, was almost a year old at the time of the hearing and had not been revised for the 2006–2007 school year. See Frank G., 459 F.3d at 364. Second, the IHO once again overlooked critical evidence presented at the hearing—Ms. Sugarman's testimony that WPS provided Robert with small class and individual instruction designed to remediate his language deficits.

Neither Plaintiff nor WPS was bound by the DOE's outdated IEP, and the DOE presented no evidence to refute Ms. Sugarman's testimony that WPS's academic program was appropriate for Robert. It was error for the IHO to conclude that the absence of speech and language therapy from Robert's program at WPS militated against a finding that the school was appropriate for him. See Frank G., 459 F.3d at 365 ("[P]arents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides 'educational instruction specially designed to meet the unique needs

12

of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.'" (quoting Rowley, 458 U.S. at 188–89) (citation omitted)).

**3.    The SRO Erred in Finding that Plaintiff Failed to Satisfy Her Burden of Proving That WPS Was an Appropriate Placement for Robert.**

Like the IHO, the SRO failed to properly weigh the evidence and refused to find in Plaintiff's favor on the second Burlington prong.  The manner in which the SRO handled Plaintiff's cross-appeal on this issue was completely dismissive and hardly consistent with the independent State-level review mandated by the IDEA.  See 34 C.F.R. § 300.514(b) (2007).

The SRO disposed of Plaintiff's prong-two claim in *one paragraph* of his decision.  In fact, the SRO's rationale for dismissing Plaintiff's cross-appeal is contained in *one sentence*, with most of the rest of the paragraph comprised of boilerplate legal citations.  See Exh. O at 4.  That sentence is: "I concur with the impartial hearing officer that the conclusory statement by Winston's Director of Operations and Educational Research that Winston is appropriate for the student and [the parent's] testimony that classes are 'easy' for the student and that he is 'happy' does not provide sufficient proof that Winston is appropriate for the student."  Id. (citations omitted).

The SRO neither concurred nor disagreed with the IHO's legal assessments regarding proof of progress at WPS and speech and language therapy.  He in no way addressed those issues, except to note the IHO's conclusions in the factual summary portion of his decision.  Consequently, this Court owes no deference to the SRO on these issues.

The SRO also grossly mischaracterized the evidence Plaintiff presented at the impartial hearing.  In his one-sentence analysis, the SRO completely failed to take into account Ms. Sugarman's testimony about the specifics of WPS's educational program and the reasons that

13

program was appropriate to meet Robert's special education needs. See supra Point II.B.1.[7] The SRO's dismissal of Plaintiff's cross-appeal, founded as it is on this dismissive one-sentence analysis, is entitled to little, if any, deference from this Court and should be overturned on the factual record.

## C.    The Additional Evidence Submitted Herewith Further Demonstrates That WPS Was an Appropriate Placement for Robert.

While parents *need* not prove that their child made progress at a unilateral private placement in order to prevail on a Burlington claim, progress is, under appropriate circumstances, a relevant prong-two consideration. See Frank G., 459 F.3d at 364; id. at 366 (holding that student's social and academic progress supported appropriateness of private placement). The additional evidence submitted herewith demonstrates that Robert made progress at WPS during the 2006–2007 school year and provides additional descriptive evidence of the manner in which WPS's academic program met Robert's individual special education needs.

WPS evaluated Robert using standardized academic testing prior to his admission to the school. See Exh. B at 21–22. A comparison of those evaluation results and the results of standardized testing administered by the DOE in March 2007 and WPS in May 2007 reveals that Robert made "tangible progress" at WPS. Between April 2006 and March 2007, Robert's grade equivalent in letter-word identification improved from 3.8 to 4.8. Compare Feldman Aff. ¶ 12 with Exh. U at 6. In addition, between April 2006 and May 2007, Robert improved from the 9th percentile to the 25th percentile in contextual conventions and context language, and from the 37th percentile to the 50th percentile in story construction. See Feldman Aff. ¶ 12; Exh. Y at 8.

---

[7] The SRO mentioned, in the factual summary portion of his decision, Ms. Sugarman's testimony regarding Robert's placement in a small class and receipt of daily, one-to-one instruction through the Focus program. See Exh. O at 2. However, the SRO did not discuss that evidence in assessing whether Plaintiff satisfied her prong-two burden. See id. at 4.

In addition to standardized testing score reports, Plaintiff also received three descriptive reports on Robert's progress from WPS during the 2006–2007 school year.  See Exhs. V–X; Rodriguez Aff. ¶ 17.  These reports include assessments prepared by Robert's Focus teacher, Jessica Bottomley, that attest to the educational benefits Robert derived from the daily, one-to-one instruction offered at WPS.  See Exh. V at 1 ("A primary goal in Focus is to build Robert's confidence and independence.  To date, Robert's transition appears to be one of ease and success."); Exh. W at 1 ("Robert's first semester at [WPS] has been one of gradual success. . . . In Focus, Robert has strengthened organization, time management, and reading and writing skills this semester."); id. at 2  ("[Robert] has gained understanding that he can learn from mistakes, and as a result, has increased risk-taking in both class and Focus."); id. ("With reminders about previously discussed rules for conversational discourse . . . , Robert is increasing awareness of his distractibility and improves this for the remainder of the Focus period.  Robert has also improved in following previously discussed rules of conversation by staying on-topic and signaling transitions appropriately."); Exh. X at 1 (noting improvement in reading comprehension skills and reading fluency).

These progress reports also document the benefits Robert derived from, and the progress he made in, WPS's small class setting.  See, e.g., Exh. W at 2 (report from language and literature teacher Peter Hill that Robert "made gradual, yet steady progress in his decoding, vocabulary, reading fluency, and comprehension"); id. at 3 (report from math teacher Brooke McGeory that Robert improved his mathematical skills during fall semester and "improved tremendously staying in his seat and staying focused on his work"); id. at 4 (report from Mr. Hill that study skills taught at WPS, "combined with a multi-layered reinforcement strategy which includes PowerPoint presentations, word webs, graphic organizers, flash cards, and student-

generated study questions ha[d] helped Robert grasp some new information and concepts in class"); Exh. X at 3 (report from Ms. McGeory that Robert was "becoming more confident and comfortable with newly learned skills, such as using the calendar as well as telling and managing time" and that "[w]hen given daily life experiences and commitments, Robert managed his time and schedule successfully").

Robert also experienced difficulties at WPS. As Susan Feldman—the middle school dean at WPS and Robert's science teacher—explains, Robert's attendance at WPS has been characterized by "slow progress with occasional setbacks." Feldman Aff. ¶ 11. However, WPS provided Robert with "one-on-one intervention" whenever he experienced a setback in order to remediate the problem and allow him to move forward. Id. Moreover, it is clear that the gains Robert made at WPS are meaningful and that, despite his setbacks, he made meaningful advances during the 2006–2007 school year.

In addition to showing meaningful progress at WPS, the additional evidence details the manner in which WPS's academic program met Robert's speech and language needs. See Exh. BB at 2 (listing Robert's speech and language needs and strategies employed at WPS to meet those needs); Exh. W at 3–4 (report from Ms. Feldman that fall semester instruction primarily emphasized "breaking down multisyllabic or unfamiliar words and strengthening Robert's reading comprehension," and that through these processes Robert "continu[ed] to expand his vocabulary").

As discussed in detail above, Plaintiff satisfied her burden of proving that WPS was an appropriate placement for Robert at the impartial hearing. See supra Point I.B. The additional evidence submitted herewith further demonstrates the appropriateness of Robert's placement at WPS and provides the proof of progress deemed necessary by the IHO. Plaintiff respectfully

requests that the Court receive this additional evidence and find that Plaintiff's prong-two burden has been satisfied, entitling her to payment of the WPS tuition.

## POINT II

### THERE HAS BEEN NO FINAL ADJUDICATION ON THE MERITS AT THE IHO LEVEL OF PLAINTIFF'S CLAIM FOR TUITION PAYMENT. CONSEQUENTLY, PLAINTIFF IS NOT BARRED FROM LITIGATING THIS CLAIM IN A SECOND IMPARTIAL HEARING.

**A.    The IHO's Decision Dismissing Plaintiff's Claim Without Prejudice Was Not a Final Judgment on the Merits and Therefore Has No Res Judicata Effect.**

"The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Monahan v. N.Y. City Dep't of Corrections, 214 F.3d 275, 284 (2d Cir. 2000) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). To prove the affirmative defense of res judicata, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Id. at 285.

Here, the impartial hearing did not result in an adjudication on the merits of Plaintiff's claim for private school tuition payment. At the hearing, the DOE conceded that it failed to offer Robert a FAPE for the 2006–2007 school year. Exh. B at 2. The IHO therefore found in Plaintiff's favor on the first Burlington prong. Exh. D at 7. Finding that equitable considerations favored the parent, the IHO also ruled in Plaintiff's favor on the third Burlington prong. See id. at 9. With regard to prong two, however, the IHO found that Plaintiff "was unable to offer any proof that [the] child had made any tangible progress at Winston during the first month of

school." Id. at 8. The IHO attributed this failure of proof to "the fact that [Robert] ha[d] not been in the placement long enough to make such an assessment." Id.

The IHO therefore denied Plaintiff's claim for payment of the WPS tuition without prejudice. The IHO's Findings of Fact and Decision states: "Such denial is, of course, *without prejudice* and may be renewed after the child has been at Winston for a longer period of time when the parent may be in a better position to present evidence that Winston is providing the child with educational benefits and is thus, appropriate for the child." Id. at 9–10 (emphasis added).

This decision was not a final adjudication on the merits. The IHO explicitly rendered her dismissal "without prejudice" and authorized Plaintiff to refile her claim at a later date. As this Court has held, explicit dismissal of an action without prejudice "'surely indicates a refusal to rule upon the merits of those causes of action.'" Raine v. Paramount Pictures Corp., No. 97 Civ. 3553 DLC, 1998 WL 655545, at *8 (S.D.N.Y. Sept. 24, 1998) (quoting Miller Mfg. Co. v. Zeiler, 383 N.E.2d 1152, 1152 (N.Y. 1978)); see also In re Fischer, 252 B.R. 603, 609 (Bankr. E.D.N.Y. 2000) ("'A dismissal of an action *without prejudice* is an indication that the judgment is not on the merits and will therefore have no preclusive effect.'" (quoting 18 James Wm. Moore, et al., Moore's Federal Practice § 131.54(1) (3d ed. 1997)).

Consequently, the IHO's decision can have no res judicata effect. "It is well established that a dismissal without prejudice has no res judicata effect on a subsequent claim." Camarano v. Irvin, 98 F.3d 44, 47 (2d Cir. 1996); see also City of New York v. Caristo Constr. Corp., 463 N.Y.S.2d 17, 18 (N.Y. App. Div., 1st Dep't 1983) ("[T]he phrase 'without prejudice' literally and precisely means that the judgment in the first action shall not prejudice, i.e., bar, the later action."); Charles H. Koch, Jr., Administrative Law and Practice § 5.72[1] (2d ed. 1997) ("The

policy underlying the doctrine of res judicata is one of repose. The judgment in an action must resolve the doubt between the parties as to the validity of the cause of action. . . . In order to have preclusive effect, the administrative decision must be final.").

The IHO's dismissal in this case was expressly made non-final. It left open the resolution of the prong-two issue and did not resolve the doubt between the parties as to the validity of Plaintiff's claim for private school tuition payment. As such, it has no res judicata effect and does not bar Plaintiff from seeking payment of the 2006–2007 WPS tuition in a second impartial hearing.

**B.      It Was Within the IHO's Authority to Dismiss Plaintiff's Claim for Tuition Payment Without Prejudice.**

**1.      The IDEA and Its Implementing Regulations Afford IHOs Discretion in Procedural Matters.**

The impartial hearing is the cornerstone of the IDEA's guarantee of procedural due process to parents who disagree with a school district's program for their child. See 20 U.S.C.A. § 1415 (Supp. 2005). In this case especially, where the DOE openly confessed that it failed to offer the student a FAPE, it was incumbent on the IHO to ensure that the parent had a full and fair opportunity to prove her claim for a private placement at the school district's expense.

The IDEA and its implementing federal regulations prescribe basic due process procedures for impartial hearings. See 20 U.S.C.A. § 1415; 34 C.F.R. §§ 300.507–20 (2007). These provisions are designed to protect the fundamental procedural rights of parents and school districts, but they are not comprehensive. See Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children with Disabilities; Final Rule, 71 Fed. Reg. 46,705 (Aug. 14, 2006) ("These requirements are general in nature and appropriately reflect the fact that standard legal practice will vary depending on the State in which the hearing is held.").

They do not, for example, include formal rules of evidence, set forth standards for motion practice, or prescribe penalties for a party's failure to comply with many due process timelines.

Rather, hearing officers are entrusted "to conduct hearings in accordance with appropriate, standard legal practice." Id. The U.S. Department of Education has explained: "We believe that the requirements for hearing officers are sufficient to ensure that proper legal procedures are used and that it is not appropriate to regulate on every applicable legal procedure that a hearing officer must follow, because those are matters of State law." Id.

The New York State regulations also do not provide a comprehensive set of procedural rules for impartial hearings. See 8 N.Y.C.R.R. § 200.5 (2007). They do, however, prescribe detailed qualification requirements for hearing officers. Among other things, an IHO must "be an individual admitted to the practice of law in the State of New York who is currently in good standing and who has a minimum of two years practice and/or experience in areas of education, special education, disability rights or civil rights." § 200.1(x)(1). An IHO also must "possess knowledge of, and the ability to conduct hearings in accordance with appropriate, standard legal practice and to render and write decisions in accordance with appropriate standard legal practice." § 200.1(x)(4)(v).

IHOs must exercise discretion with regard to procedural matters to ensure that hearings are conducted and decided fairly and appropriately. As the U.S. Department of Education has explained:

> The specific application of those [due process] procedures to particular cases generally should be left to the discretion of hearing officers who have the knowledge and ability to conduct hearings in accordance with standard legal practice. There is nothing in the Act or these regulations that would prohibit a hearing officer from making determinations on procedural matters not addressed in the Act so long as such determinations are made in a manner that is consistent with a parent's or a public agency's right to a timely due process hearing.

71 Fed. Reg. 46,704; see also Application of the Bd. of Educ. of the Granville Cent. Sch. Dist., Appeal No. 05-007 ("[A]lthough the formal rules of evidence and motion practice that are applicable in civil proceedings generally do not apply in impartial hearings, nothing precludes an impartial hearing officer from considering a motion by either party under appropriate circumstances.").

In this case, the IHO used her discretion to dismiss Plaintiff's claim for private school tuition payment without prejudice. There is no provision in either the state or federal IDEA regulations that explicitly permits or prohibits the dismissal without prejudice of claims raised in a parent's impartial hearing request. However, the IHO's exercise of discretion finds strong support in New York civil procedure.

### 2. New York State Civil Procedure Supports the IHO's Decision to Dismiss Plaintiff's Claim Without Prejudice.

Under the New York Civil Practice Law and Rules, "[a] judgment dismissing a cause of action after the close of the proponent's evidence is a dismissal on the merits *unless it specifies otherwise.*" N.Y. C.P.L.R. 5013 (McKinney 2006) (emphasis added). As such, a "court has discretion to specify whether its order dismissing a claim is to have res judicata effect." Stacy "O" v. Donald "P", 525 N.Y.S.2d 385, 386 (N.Y. App. Div, 3rd Dep't 1988) (citing N.Y. C.P.L.R. 5013); see also Susan A. v. John K., 759 N.Y.S.2d 417, 418 (N.Y. App. Div., 4th Dep't 2003) (holding that, under C.P.L.R. 5013, "Family Court is vested with discretion to dismiss a petition without prejudice, even after the close of petitioner's proof").

A court properly offsets the presumption in C.P.L.R. 5013 and "invokes its 'power to dismiss without prejudice' in situations where 'there has been a failure of proof' and the court 'believes that the plaintiff's claim is meritorious and that the plaintiff should be given another opportunity to establish the cause of action.'" Raine v. Paramount Pictures Corp., 1998 WL

655545, at *7 (quoting 10 Jack B. Weinstein et al., New York Civil Practice: CPLR ¶ 5013.03

(Matthew Bender rel. no. 71, 1994 & Supp. 1998)). "The courts do not favor the preclusion of a

second action where the dismissal of the first was for a failure of proof." Watkins v. Pac. Fin.

Corp., 20 N.Y.S.2d 599, 601 (N.Y. App. Div., 2d Dep't 1940); see also Champion Int'l Corp. v.

Dependable Indus. Corp., 367 N.Y.S.2d 273, 275 (N.Y. App. Div., 1st Dep't 1975) (same

(quoting Watkins)), appeal dismissed, 337 N.E.2d 119 (N.Y. 1975).

　　　　　Thus, "where a plaintiff has failed to establish a prima facie case, but it appears that proof

which would support a prima facie case is available, the complaint should be dismissed 'without

prejudice.'" Kilduff v. Donna Oil Corp., 424 N.Y.S.2d 282, 284 (N.Y. App. Div. 2d Dep't 1980)

(quoting Giglio v. Haber, 243 N.Y.S.2d 539 (N.Y. App. Div., 2d Dep't 1963)); see also Raine v.

Viacom Int'l Inc., 638 N.Y.S.2d 81, 81 (N.Y. App. Div., 1st Dep't 1996) (holding that dismissal

at close of plaintiff's case was  "correctly . . . [made] without prejudice, because the disposition

was based on lack of evidence which might become available at some point in the future");

Lewis v. Barsuk, 389 N.Y.S.2d 952, 953 (N.Y. App. Div., 4th Dep't 1976) (holding that, where

there was failure of proof on part of plaintiff, plaintiff should be granted new trial "[i]nasmuch as

the proof necessary to sustain each cause of action is available to plaintiff"); Champion Int'l

Corp., 367 N.Y.S.2d at 275 (holding that dismissal of plaintiff's action for failure of proof should

have been made without prejudice because it "clearly appear[ed]" that plaintiff's proof against

defendant was available); Roland v. Hubbard, 318 N.Y.S.2d 644, 644 (N.Y. App. Div., 1st Dep't

1971) (holding that dismissal at close of plaintiff's case for failure of proof should have been

made without prejudice, as "plaintiff should have been afforded the opportunity by means of a

simple nonsuit to endeavor to procure and present the necessary evidence if available"); Giglio,

243 N.Y.S.2d at 539 (holding that dismissal of complaint at close of plaintiff's case should have

22

been made without prejudice, since proof was "available to plaintiff which w[ould] readily enable him to establish a prima facie case").

Here, the IHO determined that Plaintiff was required to submit proof of "tangible progress" at WPS during the 2006–2007 school year in order to prevail on the second <u>Burlington</u> prong. However, the hearing was held only one month into the school year—a point in time when meaningful proof of progress could not be obtained. As in the New York State cases cited above, the proof Plaintiff was found to be lacking—proof that potentially would render her claim meritorious—was likely to become available to her in the future.

As set forth in Point I.B, <u>supra</u>, Plaintiff submitted evidence at the impartial hearing showing that WPS's academic program was appropriate to meet Robert's special education needs and reasonably calculated to provide him with educational benefits. However, it is clear from the record that the IHO believed that proof of progress in the WPS setting was also needed. Having expressed her judgment on this issue, the IHO acted within her authority and discretion to render her dismissal without prejudice so as to preserve Plaintiff's opportunity to prove her entitlement to tuition payment under the IDEA.

### 3.    The Finality Provision of the IDEA Does Not Bar the Dismissal of Plaintiff's Claim Without Prejudice.

In overturning the IHO's decision, the SRO did not mention—much less discuss—C.P.L.R. 5013 or the above-cited line of New York cases.[8] Rather, relying on § 1415(i)(1)(A) of the IDEA and the corresponding federal and state regulations, the SRO held that it was error for the IHO to "qualify[] the dismissal of [the parent's] claim as 'without prejudice.'" Exh. O at 4.

Section 1415(i)(1)(A) of the IDEA provides that a hearing officer's decision "shall be final, except that any party involved in such hearing may appeal." 20 U.S.C.A. § 1415(i)(1)(A).

---

[8] The New York State cases cited above were cited in Plaintiff's briefs to the SRO. <u>See</u> Exh. M.

The import of the provision is clearly that both the parent and the school district are *bound* by a hearing officer's decision unless there is an appeal. In fact, the language of the corresponding New York State regulation is: "The decision of the impartial hearing officer shall be *binding* upon both parties unless appealed to the State review officer." 8 N.Y.C.R.R. § 200.5(j)(5)(v) (emphasis added). However, the provision hardly constitutes a categorical prohibition of the dismissal without prejudice of impartial hearing claims.

The IDEA is a remedial statute whose "express purpose . . . is to ensure that a free appropriate public education is 'available to all children with disabilities.'" Frank G. v. Bd. of Educ., 459 F.3d 356, 371 (2d Cir. 2006), cert. denied, 128 S. Ct. 436 (2007). Its provisions must be interpreted in a manner that is compatible with this express purpose of guaranteeing FAPE. See id. at 371–72; see also LIH v. N.Y. City Bd. of Educ., 103 F. Supp. 2d 658, 669 n.17 (E.D.N.Y. 2000) (indicating that courts must apply standard of liberal construction when implementing broad remedial statute such as IDEA). The U.S. Supreme Court has explained: "The Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives." Burlington v. Dep't of Educ., 471 U.S. 359, 372 (1985).

In accordance with these principles, the U.S. District Court for the District of Columbia held in Thomas v. District of Columbia, 407 F. Supp. 2d 102 (D.D.C. 2005), that there was no res judicata effect where prior hearing officer decisions expressly preserved the parent's IDEA claim for a future proceeding and insulated that claim from a statute of limitations defense  Id. at 114–15. The court premised this decision on two factors: (1) "each of the prior [hearing officer decisions] included language specifically aimed at preventing the kind of claim preclusion or *res judicata* ruling entered by [the subsequent] Hearing Officer"; and (2) "each of these earlier

rulings constituted a constructive finding of a denial of FAPE and a violation of the IDEA." Id.
at 115.

Here, as in Thomas, the IHO included language in her decision specifically aimed at
preventing a later res judicata ruling—a statement that her dismissal was rendered without
prejudice. Also as in Thomas, the IHO's decision constituted a finding of a denial of FAPE and
a violation of the IDEA on the part of the DOE. Just as the finality provision of the IDEA did
not bar the preservation of the parent's claim in Thomas, it should be found not to bar the IHO's
dismissal without prejudice of Plaintiff's claim here.

The IHO's decision to dismiss Plaintiff's claim without prejudice was a judgment based
on Robert's educational needs and substantive rights under the IDEA. As such, it is entitled to
deference from this Court. Assuming the IHO was correct to dismiss Plaintiff's claim, rendering
her dismissal without prejudice was not only an appropriate exercise of discretion, but a
necessary means of ensuring that the IDEA's due process procedures did not frustrate the Act's
primary purpose of guaranteeing FAPE.

**C.    Even Assuming, Arguendo, That the IHO Lacked the Authority to Dismiss
       Plaintiff's Claim Without Prejudice, the SRO Should Have Remanded the Case to
       the IHO to Reach a Final Determination on the Merits.**

Whether or not the IHO had the authority to dismiss Plaintiff's claim without prejudice, it
was wholly inappropriate for the SRO to reinterpret the IHO's dismissal without prejudice as a
final determination on the merits. As discussed in Point II.A, supra, the dismissal of a claim
without prejudice clearly indicates that the factfinder refused to rule on the merits of the claim.
There therefore has been no final adjudication of Plaintiff's claim at the IHO level. Assuming,
arguendo, that the IHO erred in dismissing Plaintiff's claim without prejudice, the appropriate
remedy was for the SRO to remand the case to the IHO to reach a decision on the merits.

Although the IHO explicitly and unambiguously rendered her dismissal without prejudice, the SRO found that the IHO "rendered a decision adjudicating [the parent's] claim on the merits." Exh. O at 4. The SRO then disposed of the case by annulling the IHO's decision to the extent that it ordered dismissal of Plaintiff's claim "without prejudice." Id. at 5; cf. Application of a Child with a Disability, Appeal No. 98-46 (holding that IHO's dismissal without prejudice of parent's claim—premised on failure of both parties to appear on scheduled hearing date—was "not a final determination" and that the parent's "obvious remedy [wa]s to request a new hearing").

The SRO's decision fails to take into account that the IHO clearly *thought* she had the authority to dismiss Plaintiff's claim without prejudice. It also fails to take into account that the IHO very well might have conducted the hearing or rendered her decision differently if she did *not* think she had this authority. For example, the IHO could have held the hearing record open, or granted a reasonable adjournment, to allow for the submission of evidence of progress after Robert had attended WPS for a longer period of time. See Application of a Child with a Disability, Appeal No. 01-100 ("It is a hearing officer's responsibility to obtain an adequate record to support his or her decision."). Alternatively, the IHO simply could have dismissed Plaintiff's claim as premature. See Application of a Child with a Disability, Appeal No. 05-072 (noting that first IHO, *after conducting a hearing,* dismissed parent's claim for private school placement as premature and that the same claim was later litigated in a second impartial hearing).

The SRO's disposition of the case was inappropriate. The SRO could have—and should have—authorized Plaintiff to pursue her claim in a second impartial hearing in accordance with the IHO's without prejudice dismissal. Short of that, the SRO should have remanded the case so the IHO could receive evidence of progress and render a final decision on the merits. Cf.

26

Application of a Child with a Disability, Appeal No. 07-033 (remanding case to IHO for new hearing on timeframe for provision of compensatory services where parent did not raise that issue during hearing, record contained no evidence on that issue, and IHO's decision did not indicate basis for deciding that services should be provided over six-month period).

The SRO chose neither of those options. Instead, the SRO converted the IHO's dismissal without prejudice into a dismissal with prejudice, ensuring that Robert would not receive a FAPE for the 2006–2007 school year. This decision was an abuse of discretion and should not be upheld by this Court.


### POINT III

**THIS COURT SHOULD EXERCISE ITS EQUITABLE POWER UNDER THE IDEA TO GRANT PLAINTIFF RELIEF AND EFFECTUATE ROBERT'S RIGHT TO A FAPE**

The IDEA authorizes courts to grant all "appropriate" relief. 20 U.S.C.A. § 1415(i)(2)(c)(iii) (Supp. 2005). In Burlington, the Supreme Court interpreted that provision to mean that district courts have "broad discretion" to grant relief that is appropriate in light of the purposes of the Act. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369 (1985). The Court further declared: "In a case where a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that 'appropriate' relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school." Id. at 370.

The Court affirmed this generous view of the Act's broad remedial purpose in Carter, holding that parents may be entitled to tuition reimbursement even when they have unilaterally placed their child in a private school that, like WPS, is not state-approved. Florence County Sch.

Dist. Four v. Carter, 510 U.S. 7, 9–10 (1993). The Court explained: "[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.'" Id. at 15–16 (quoting 20 U.S.C. § 1415(e)(2)). "'[E]quitable considerations are relevant in fashioning relief,' and the court enjoys 'broad discretion' in so doing." Id. at 16 (quoting Burlington, 471 U.S. at 374) (citations omitted); see also Burlington, 471 U.S. at 370–71 ("Reimbursement merely requires the [school district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.").

This case cries out for the exercise of this Court's equitable power to remedy a flagrant violation of the IDEA's core entitlement—the right of a disabled student to a FAPE. For the 2006–2007 school year, the DOE did not prepare a current IEP for Robert and did not offer him a school placement. See Rodriguez Aff. ¶ 18. Plaintiff did not reject a DOE placement and choose instead to enroll her son in a private school; her choices were a private, unilateral placement *or nothing*.

Faced with this untenable choice, Plaintiff enrolled Robert in WPS, incurring a financial obligation of $38,750.00. Id. ¶ 14. Her modest income would not allow her to pay this amount in advance, so she went to an impartial hearing at the beginning of the school year, seeking an order for prospective payment of the WPS tuition. Id. ¶ 15. At the impartial hearing, the DOE did not even attempt to defend its actions, simply conceding that it denied Robert a FAPE. Exh. B at 2. The IHO, however, refused to grant Plaintiff tuition payment without proof that Robert had made "tangible progress" at WPS and dismissed Plaintiff's claim without prejudice. Exh. D at 8–10.

As the IHO clearly realized, obtaining payment of the WPS tuition from the DOE was the only way for Plaintiff to secure a FAPE for Robert. If Plaintiff's claim for tuition payment were

denied with prejudice, Robert would be left with no public school placement and no way to fund his private school placement. He would effectively have no remedy for the DOE's conceded failure to provide him with a FAPE for the 2006–2007 school year. Moreover, the IHO's rationale for denying Plaintiff's requested remedy was essentially one of timing—Plaintiff was required to submit proof of progress at WPS in order to obtain payment of the WPS tuition, but such proof was not yet available at the time of the hearing.

As aptly stated by the New York Court of Appeals, "It would be inequitable to preclude a party from asserting a claim under the principle of res judicata, where . . . '[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action.'" Parker v. Blauvelt Volunteer Fire Co., 712 N.E.2d 647, 650 (N.Y. 1999) (quoting Restatement (Second) of Judgments § 26(1)(b) (alteration in original)). Nonetheless, the SRO declared that Plaintiff was blocked by principles of res judicata from pursuing her IDEA claim, and seeking redress for the DOE's conceded denial of FAPE, in a second impartial hearing—a hearing in which she would be able to submit proof of Robert's progress at WPS.

The SRO chose neither to make Plaintiff whole, by awarding her tuition payment, nor to preserve her claim for a future hearing. Instead, the SRO simply directed the DOE to do what it should have done in the first instance—to reconvene its Committee on Special Education "as soon as possible and offer the student an appropriate program and placement for the 2006-07 school year consistent with the requirements of the IDEA." Exh. O at 5.

The DOE, insulated from Plaintiff's private school tuition claim, ignored this order. The Committee on Special Education did not prepare an IEP for Robert until after the 2006–2007 school year was over and never offered him a school placement. The DOE also never offered Robert a placement for the 2007–2008 school year. Rodriguez Aff. ¶¶ 18–19.

This intolerable result is fully within the Court's power to remedy. More than eighty years ago, speaking of another federal statute in terms that could well apply to the IDEA's guarantee of a FAPE, the Supreme Court said: "This provision is highly remedial and should be liberally construed to effect the purposes of Congress and to give remedy in all cases intended to be covered." Miller v. Robertson, 266 U.S. 243, 248 (1924). In this case, the DOE's admitted failure to provide Robert with a FAPE is a clear violation of the IDEA—a violation that cries out for a remedy. Plaintiff respectfully submits that it is fully within the Court's power to grant that remedy, and that the Court should exercise its equitable authority to do so.

## CONCLUSION

We respectfully request that the Court overturn the SRO's decision and order the DOE to pay for Robert's tuition at WPS for the 2006–2007 school year, in the amount of $38,750.00. In the alternative, we request that the Court either (1) authorize Plaintiff to pursue her claim for the 2006–2007 school year WPS tuition in a second impartial hearing; or (2) remand the case to the IHO to conduct further fact-finding on the issue of progress and reach a decision on the merits of Plaintiff's claim for payment of the WPS tuition.

Dated: New York, New York
      December 7, 2007

PARTNERSHIP FOR CHILDREN'S RIGHTS
WARREN J. SINSHEIMER (WJS 9906)
MICHAEL D. HAMPDEN (MDH 2359),
    of Counsel
ERIN MCCORMACK, ESQ.
    (on the Memorandum of Law)
Attorneys for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 222
Fax: (212) 683-5544