UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————x

G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant,

              Plaintiff,                     No. 07 Civ. 4711 (TPG)

        -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION,

              Defendant.
——————————————————————x

## PLAINTIFF'S NOTICE OF MOTION
## FOR SUMMARY JUDGMENT
## AND AFFIDAVITS

PARTNERSHIP FOR CHILDREN'S RIGHTS
WARREN J. SINSHEIMER (WS 9906)
MICHAEL D. HAMPDEN (MH 2359),
      of Counsel
Attorneys for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999, ext. 222

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant,

                           Plaintiff,

                     -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                    Defendant.
-----------------------------------X

                                  NOTICE OF MOTION
                                  FOR SUMMARY JUDGMENT

                                  Docket No.
                                  07 Civ. 4711 (TPG)

PLEASE TAKE NOTICE that upon the annexed Declaration of WARREN J.

SINSHEIMER, the Affidavit of GLORIA RODRIGUEZ, the Affidavit of SUSAN FELDMAN,

the attached Exhibits, the accompanying Memorandum of Law, and upon all the papers and

proceedings had herein, Plaintiff will move this Court before the Honorable Thomas P. Griesa, at

the Daniel Patrick Moynihan United States Courthouse, located at 500 Pearl Street, New York,

New York, Courtroom 26B, for an Order:

    1. Receiving the records of the administrative proceedings below, and permitting Plaintiff

to supplement the record with additional evidence pursuant to 20 U.S.C. § 1415(i)(2)(C);

    2. Granting Summary Judgment in favour of the Plaintiff;

    3. Entering judgment declaring (a) that the DOE failed to provide Robert a Free

Appropriate Public Education for the 2006-2007 school year; (b) that Winston Preparatory

School constitutes an appropriate placement for Robert under the IDEIA; and (c) that equitable

considerations do not preclude a tuition award to plaintiff;

    4. Entering judgment vacating and annulling SRO decision No. 06-133 in its entirety;

5. Ordering defendant to pay Winston Preparatory School tuition for Robert Rios for the 2006-2007 school year in the amount of $38,750.00; or alternatively, declaring that plaintiff is presently entitled to now request an Impartial Hearing seeking an order of tuition payment from defendant, because it was fully within the authority of the Impartial Hearing Officer in the first hearing to dismiss plaintiff's tuition claim without prejudice to her commencing a second Impartial Hearing for tuition payment later in the school year when evidence of the student's progress in the private school setting became available; and

6. Such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
      December 5, 2007

/PARTNERSHIP FOR CHILDREN'S RIGHTS
WARREN J. SINSHEIMER (WJS 9906)
MICHAEL D. HAMPDEN (MDH 2359),
    of Counsel
Attorneys for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 222
Fax: (212) 683-5544

To:
Andrew J. Rauchberg
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant,

                                        DECLARATION OF ATTORNEY
                    Plaintiff,          IN SUPPORT OF MOTION
                                          FOR SUMMARY JUDGMENT

        -against-

NEW YORK CITY DEPARTMENT OF          Docket No.
EDUCATION,                              07 Civ. 4711 (TPG)

                    Defendant.
-----------------------------------------------------X

        WARREN J. SINSHEIMER, an attorney duly admitted to practice before this Court,

affirms under penalties of perjury as follows:

        1. I am the founder and president of Partnership for Children's Rights (PFCR), and

attorney for the plaintiff, Gloria Rodriguez. I make this declaration in support of plaintiff's

Motion for Summary Judgment.

        2. In this action brought pursuant to the Individuals with Disabilities Education

Improvement Act (IDEA or the Act), 20 U.S.C. § 1400 et seq., plaintiff seeks reversal of a final

New York State administrative decision rendered by the State Review Office (SRO), denying

2006-2007 tuition funding for the placement of her son Robert Rios (Robert) at Winston

Preparatory School (WPS), a private school for learning-disabled and speech/language impaired

students.

3. I have personal knowledge of the facts of this case. I have represented the plaintiff at the Impartial Hearing, SRO, and District Court levels of this case, from its inception.

4. Plaintiff moves this Court for summary judgment to remedy a gross deprivation of rights conferred by federal law – substantive and procedural rights that lie at the core of the Act.

5. This is a private school tuition case – but it is much more than the typical appeal in which the parent seeks to prove that the administrative decision below was simply wrong on the merits in denying her an award of tuition.

6. Here, through a combination of the Department's admitted failure to educate Robert, and the SRO's ruling that stripped plaintiff of her procedural right to be made whole for her own actions in doing for her son what the Department failed to do, she is now legally obligated for $38,750.00 in private school tuition that the Act places squarely on the shoulders of the Department.

7. In short, the pernicious effect of the SRO's decision is not only to deny Robert the free, appropriate education guaranteed to him by the Act – despite the defendant Department's plain admission that it failed to do so – but it also to subvert her due-process procedural rights under the Act as well.

8. As will be seen below and in the accompanying affidavits and memorandum of law, the SRO (1) disregarded the Department's confession that it offered no educational program to Robert; (2) overturned the Impartial Hearing Officer's disposition of the case that had effectively protected plaintiff's right to prove her entitlements under the Act; and (3) cynically returned the case to the Department more than half way through the school year with the direction to do what it admitted it could not do – give Robert an appropriate educational placement and services.

9. Since the SRO decision, the Department has taken no steps whatsoever to carry it out – nor could it have done so in any meaningful way because by the time the SRO ruled, the 2006-2007 school year was more than half over.

**Summary of Facts Giving Rise to this Action,**
**as Alleged in the Complaint.**

10. Robert was born September 6, 1995. He has been a special education student since pre-school and is presently classified as speech and language impaired.

11. Robert is a sixth-grade student at WPS, a private special education school that specializes in the instruction of learning disabled and speech and language impaired students.

12. From kindergarten through fifth grade, Robert attended New York City public schools and was classified either as learning disabled or speech/language impaired.

13. In September 2002, when Robert was in a second-grade self-contained special education class in public school, his teacher reported that he was withdrawn, over-anxious, unfocused and shy, had panic attacks, and had difficulty in listening and attending. He rarely spoke to adults, and remembered what he learned only short-term.

14. During second-grade testing performed by the DOE, Robert was unable to read a passage at the first-grade level, and was unable to answer any comprehension questions after being read a pre-primer story. His math skills tested at two years below grade level.

15. Three years later, in September 2005, when Robert was in fifth grade, triennial testing showed that his academic skills had not progressed relative to his peers: In fact, his reading had fallen to between two and three years below grade level, and his math skills had fallen to between three and four years below grade level.

16. Robert remained in a self-contained special education class in public school through the end of fifth grade (the 2005-2006 school year).

17. During the 2005-2006 school year, the DOE's Committee on Special Education (CSE) held no meeting, issued no Individualized Education Program (IEP), and recommended no placement for Robert for his sixth grade, 2006-2007 school year.

18. With no educational program developed or proposed for Robert by the DOE for the 2006-2007 school year, plaintiff gave written notice on August 17, 2006 that she was withdrawing Robert from public school; she unilaterally enrolled Robert in WPS and requested an Impartial Hearing to obtain an order of tuition payment by the DOE.

19. WPS's tuition for the 2006-2007 school year is $38,750.00, including a required deposit at the time of enrollment of $3,875.00.

20. To pay the deposit, plaintiff applied for and obtained a bridge loan from The Fairness Fund, a not-for-profit entity that provides loans for low-income parents to enable them to enroll their children in appropriate private special education schools.

21. Pursuant to the loan agreement signed by WPS and the plaintiff, the Fairness Fund paid Robert's deposit of $3,875.00 to WPS on plaintiff's behalf; WPS agreed to refund to the Fund the $3,875.00 deposit when it receives the full tuition payment; and the plaintiff became obligated to repay the loan if she receives a tuition payment from the DOE.

22. As a condition of enrolling Robert in WPS for the 2006-2007 school year, plaintiff signed an enrollment agreement obligating her to pay for the $38,750.00 tuition to WPS.

23. Plaintiff is not financially able to pay the WPS tuition in advance, and thereafter seek reimbursement from the DOE. She therefore seeks a prospective order of direct tuition payment by the DOE to WPS.

24. At the Impartial Hearing, held on October 4, 2006 before Impartial Hearing Officer (IHO) Judith T. Kramer, Esq., the DOE conceded that it had not offered Robert a free appropriate public education (FAPE) for the 2006-2007 school year, as required by the IDEA and the New York State Education Law.

25. At the October 4, 2006 Impartial Hearing, testimony was given by the plaintiff and by Beth Sugarman, WPS's Director of Operations and Educational Research, supporting plaintiff's request for an order of tuition payment by the DOE.

26. On October 23, 2007, IHO Kramer issued her decision. She found that the DOE, as conceded, had failed to offer Robert a FAPE for the 2006-2007 school year, and that no equitable considerations precluded the parent from obtaining an order of tuition payment to WPS by the DOE.

27. The IHO found, however, that because the hearing was held on October 4, 2006, at a time when the 2006-2007 school year had just begun, before evidence of educational progress at WPS could be obtained, the record contained insufficient evidence that WPS was an appropriate placement for Robert. She therefore denied plaintiff's request for an order of tuition payment "without prejudice."

28. In her decision, the IHO stated: "Such denial is, of course, without prejudice and may be renewed after the child has been at WPS for a longer period of time when the parent may be in a better position to present evidence that WPS is providing the child with educational benefits and is thus, appropriate for the child."

29. The DOE appealed the IHO's decision to the State Review Office (SRO) of the New York State Education Department, only insofar as the IHO denied tuition payment "without prejudice." The DOE claimed that the IHO lacked legal authority to deny a parent's tuition

request without prejudice to a renewal of the request in a second Impartial Hearing later in the school year when evidence of the child's educational progress became available.

30. Plaintiff answered the DOE's petition, maintaining that the IHO's action of dismissal without prejudice was appropriate and permissible; and cross-appealed, maintaining that the evidence in the hearing record was sufficient for an order directing the tuition payment.

31. On February 9, 2007, in Appeal No. 06-133, the SRO sustained the DOE's appeal and dismissed plaintiff's cross-appeal.

32. Ruling that the IHO lacked authority to dismiss plaintiff's tuition request without prejudice, the SRO stated: "I find that the impartial hearing officer rendered a decision adjudicating [the parent's] claim on the merits."

33. Regarding the plaintiff's cross-appeal, the SRO stated: "I concur with the impartial hearing officer that [the parent] has not met her burden of demonstrating that the services provided by WPS were appropriate to meet the student's education needs."

34. Despite the fact that the DOE admitted that it denied Robert a FAPE, the SRO in his decision concluded: "As a final note, the record indicates that [the parent's] son can be appropriately educated in a public school setting and there is no evidence suggesting that [the DOE] cannot meet the student's special education needs. Accordingly, a CSE should reconvene as soon as possible and offer the student an appropriate program and placement for the 2006-07 school year consistent with the requirements of the [IDEA]."

35. While the DOE's appeal to the SRO was pending, plaintiff protected her rights by filing a second Impartial Hearing request, in accordance with IHO Kramer's October 23, 2006 decision in the first hearing dismissing the case without prejudice to re-filing when evidence of progress at WPS was available to demonstrate that it was an appropriate educational placement

for Robert.

36. In this second Impartial Hearing, Case No. 107814, IHO Mary Noe, Esq. held the record open until the conclusion of the parties' pending appeal and cross appeal before the SRO. After the SRO issued its ruling on February 9, 2007, IHO Noe on February 15, 2007 dismissed the hearing request, leaving plaintiff with no available recourse, other than this federal court action, to secure an order for tuition payment by the DOE for the 2006-2007 school year.

**Plaintiff's Legal Claims, as Alleged in the Complaint.**

37. The IDEA guarantees that "A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)A).

38. Robert is a "child with a disability" as defined by the IDEA.

39. The DOE concededly failed to propose an appropriate educational program for Robert, and failed to propose an appropriate class placement for the school year 2006-2007, thereby denying him the FAPE required by the IDEA.

40. By the plaintiff's own efforts, Robert was accepted in and is attending WPS Preparatory School, a non-approved private school specializing in the education of speech/language impaired and learning disabled students.

41. WPS Preparatory School is an appropriate educational placement for Robert for the 2006-2007 school year.

42. The DOE has conceded that there are no equitable considerations that would preclude plaintiff from being awarded tuition at WPS Preparatory School for the 2006-2007 school year.

43. Plaintiff is unable to pay the WPS tuition in advance and wait to seek reimbursement from the DOE, and is therefore entitled to an award of prospective, direct tuition payment by the

DOE to WPS Preparatory School. <u>Connors v. Mills</u>, 34 F.Supp.2d 795 (N.D.N.Y. 1998).

44. Plaintiff invoked the administrative remedies available to her under the IDEA, but as a result of the SRO's decision, these remedies have proved futile, inadequate and unfair.

45. The SRO's decision is arbitrary, capricious and based on errors of state and federal law.

46. The effect of the SRO's decision was to deprive plaintiff of a full and fair opportunity to prove her entitlement to obtain tuition payment by the DOE for Robert's appropriate private school placement for the 2006-2007 school year, which the DOE concededly failed to provide.

47. The SRO erred as a matter of law in ruling that IHO Kramer lacked legal authority to dismiss plaintiff's private school tuition claim without prejudice to renewal at a time when evidence of progress in the private school setting could be adduced.

48. The SRO's decision to remand the case to the CSE – the very DOE entity whose responsibility it was to provide Robert with a FAPE in the first place – and to direct the CSE to devise an appropriate educational program for Robert for the 2006-2007 school year violated the IDEA provisions (a) that the decision-maker in the due process administrative process must be independent of the school district, and (b) requiring finality in the due process administrative proceedings available to parents.

49. The SRO's decision violated the federal and New York constitutional guarantees of due process of law by denying the parent a reasonable opportunity to be heard on her tuition claim at a second hearing when evidence of educational progress could reasonably be adduced, while at the same time giving the DOE a second opportunity to provide an appropriate educational program for Robert.

50. The SRO's decision unfairly and illegally favored the DOE, which failed in its responsibilities under the IDEA and then became immune from the parent's claim for tuition reimbursement, and unfairly disfavored the parent, who was first forced by the DOE's default to act unilaterally to provide her son with an appropriate education and then precluded from seeking tuition reimbursement from the DOE to make her whole.

51. The SRO, who relied solely on the record and did not hear live testimony, rejected evidence-based discretionary judgments reached by the IHO based on her face-to-face fact-finding, and inappropriately substituted his own judgments based on the cold record, to the detriment of the plaintiff.

52. The SRO decision left the plaintiff with no available remedy for obtaining a FAPE for her son Robert, despite the DOE's concession that it failed to do so, in violation of the IDEA and New York State law.

53. Although the SRO's February 9, 2007 decision under review ordered the defendant to create an appropriate program for Robert for the 2006-2007 school year, it never did so. It issued no new IEP until after the school year was over, and thereafter never offered Robert a specific placement for either the 2006-2007 school year, or the 2007-2008 school year.

54. The result is that defendant (1) took no steps to implement the SRO's decision as ordered, and (2) failed to offer Robert an educational placement for the 2007-2008 school year, just as it had failed to do in the previous year.

54. Plaintiff has exhausted her administrative remedies as required by the IDEA.

WHEREFORE, for the reasons stated herein and in the accompanying Affidavits,

Exhibits and Memorandum of Law, plaintiff respectfully requests this Court to grant plaintiff's

motion for summary judgment in all respects.


Dated:          New York, New York
                December 5, 2007


                            WARREN J. SINSHEIMER (WS 9906)
                            Attorney for Plaintiff

                            PARTNERSHIP FOR CHILDREN'S RIGHTS
                            271 Madison Avenue, 17th Floor
                            New York, New York 10016
                            212-683-7999 ext. 222

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant,

                Plaintiff,                          AFFIDAVIT   IN SUPPORT
                                                      OF MOTION FOR
                  -against-                      SUMMARY JUDGMENT

NEW YORK CITY DEPARTMENT OF                  07 Civ. 4711 (TPG)
EDUCATION,

                Defendant.
-------------------------------------------------------X

STATE OF NEW YORK    )
COUNTY OF NEW YORK  ) : ss
      :

      Gloria Rodriguez, being duly sworn deposes and says:

      1. I am the plaintiff in this case and the mother of Robert R., who was born on

September 6, 1995.

      2. Robert has been a special education student since pre-school.  He is classified

as speech and language impaired.

      3. Robert was a sixth-grade student at Winston Preparatory School (WPS) during

the 2006-2007 school year. It is a private special education school.

      4. Robert attended New York City public schools until he was in the fifth grade.

      5. I became very concerned about Robert, when his second grade teacher reported

that he was withdrawn, and shy, had panic attacks, and had great difficulty in listening.

He could not remember what he had just learned.

      6. I remember that Robert's second-grade teacher told me that in the testing done

by the Department of Education, he was unable to read at a first-grade level, and could

not answer any questions after being read a pre-primer story. I was told that in math he tested at two years below his grade level.

7. Robert did not seem to improve. When Robert was in fifth grade, testing showed that he had not progressed. His reading had fallen to somewhere between two and three years below his grade, and his math skills were three and four years below grade level.

8. He was in a self-contained special education class in public school through the 2005-2006 school year (fifth grade).

9. During the 2005-2006 school year, the Committee on Special Education (CSE) held no meeting, issued no Individualized Education Program (IEP), and recommended no placement for Robert for the 2006-2007 school year, when he was to attend the sixth grade.

10. At my request, my attorney wrote a letter to the Department of Education on August 17, 2006 telling them that that I was withdrawing Robert from public school; I enrolled Robert in WPS and, through my attorney, requested an Impartial Hearing to obtain tuition payment by the Department of Education.

11. WPS's tuition for the 2006-2007 school year was $38,750.00, including a deposit at the time of enrollment of $3,875.00.

12. I had no money to pay the deposit; however, I was able to obtain a loan from The Fairness Fund. I was told that The Fairness Fund is a charity that provides loans for low-income parents to enable them to have their children accepted at private special education schools.

13. The agreement with the Fairness Fund was signed by WPS and me, and then the Fairness Fund paid Robert's deposit of $3,875.00 to WPS. WPS agreed to refund the $3,875.00 deposit to the Fund when it receives the tuition payment; I agreed to repay the loan if I receive a tuition payment from the Department of Education.

14. I also signed an enrollment agreement in which I agreed to pay the $38,750.00 tuition to WPS. The agreement is marked Exhibit H on Plaintiff's Exhibit List. I received a letter from WPS dated October 24, 2007 indicating that I owe WPS $34,875 (tuition less deposit borrowed from the Fairness Fund). This letter is marked Exhibit AA on Plaintiff's Exhibit List.

15. I was not then and am not now able to pay the WPS tuition in advance, and then get repaid by the Department of Education. I asked at the Impartial Hearing for an order requiring the DOE to immediately pay the school directly. I understand and accept that under the enrollment agreement, I am legally responsible for paying the WPS tuition, if I am not ultimately successful in obtaining an order requiring the DOE to pay it.

16. Robert has now been at WPS for more than one year. It has been like a miracle. First of all, now he wants to go to school in the morning. It used to be a nightmare to get him out of the house to go to school – but not now. He loves WPS and looks forward to seeing his friends and his teachers. Second, he is doing better in school, especially in math. I do not have to help him with his homework as I used to. I can just say that he is a different child.

17. I received progress reports for the Fall of 2007, the Winter of 2007 and the Spring of 2007 from WPS, which are designated Exhibits V, W and X respectively, indicating to me that Robert made progress during the year.

18. I cannot understand why the Department of Education does not want to help Robert. Although the SRO's February 9, 2007 decision under review ordered the defendant to meet and create an appropriate program for Robert for the 2006-2007 school year, it never did so. It issued no new IEP until after the 2006-2007 school year was over, and it never offered Robert a specific placement for the 2006-2007 or the 2007-2008 school years, as I am advised it must do by law.

19. Therefore, the Department of Education took no steps to carry out the SRO's decision as it was ordered to do, nor did it offer Robert an educational placement for the current school year – just as it failed to do last year. I don't know what the Department wants Robert to do. They will not give him an appropriate placement in the public school system, and they will not pay his tuition at WPS.

Gloria Rodriguez

Sworn to before me
this 7th day of December, 2007

Notary Public

NANCY K. DE LEON
Notary Public, State of New York
No. 01DE6152034
Qualified in Nassau County
Commission Expires August 28, 20 _10_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant,

      -against-

NEW YORK CITY DEPARTMENT OF         Docket No.
EDUCATION,                           07 Civ. 4711 (TPG)

               Defendant.
------------------------------------------------------X

**AFFIDAVIT OF SUSAN FELDMAN
MIDDLE SCHOOL DEAN, WINSTON PREPARATORY SCHOOL
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

STATE OF NEW YORK      :
                   ss:
COUNTY OF NEW YORK  :

Susan Feldman being duly sworn deposes and says:

1.      I am the middle school dean at Winston Preparatory School (hereafter "Winston') where I have been employed for 23 years.

2.      I received a BA degree in Education from American University in Washington, D.C. and a Masters Degree in Education and Special Education from American University in Washington D.C.

3.      I am certified to teach Special Education by the State of New York.

4.      I am familiar with both the admission of Robert Rios and his performance at Winston Preparatory School from the time of his admission to the present.

5.      When Robert arrived at Winston for an admission interview on April 24, 2006, his mother advised us that he did not have an Individualized Education Program (IEP) prepared by the Committee on Special Education (CSE) of the Department of Education for the 2006-2007 school year. She provided us with an IEP dated 10/7/05 and she said that it was the last one prepared for Robert. That IEP indicated that Robert was classified as "Speech and Language".

6.      Winston Preparatory School is a private special education school for sixth through twelfth grade students with learning disabilities such as dyslexia, nonverbal disabilities, expressive or receptive language disorders and attention deficit problems.

7.   In the Middle and Upper Schools at Winston each student receives a daily period of one-to-one instruction concentrating on his or her greatest areas of need. This program is called the "Focus Program." Robert has had the benefit of this program each day that he has been at Winston.

8.   While Winston does not have a formal program labeled "Speech and Language", our students with these needs are placed in class groups where there is an emphasis on speech and language problems. It is the type of teaching that is being given to Robert and other students with speech and language problems at Winston.

9.   Before we accepted Robert, he came in for an interview and was tested. As a result or our testing, last year he was placed in group 1. The Profile of group 1 in 2006 is that all of the students in that class have: pervasive, language based learning disabilities.

10.   Group meetings with content teachers and Focus instructors are held on a monthly basis (or more frequently if necessary) to review individual and group progress. Using our continuous feedback system, depending on Robert's progress, methods and/or strategies are then refined and/or revised in order to more precisely remediate his academic needs.

11.   Comprehension strategies are also individualized to meet Robert's needs. Since his arrival at Winston, he has made slow progress with occasional setbacks. Because of Robert's receptive and expressive language difficulties, whenever he has setbacks we meet with him. Robert needs the one-on-one intervention in a quiet setting to gather his thoughts and find the right language to tell us why the

2

setback. It could be something as simple as he did not understand the directions the teacher gave, and he did not ask for clarification, therefore he did not know what to do next. We are then able to remediate the process of how to ask for clarification (and not be embarrassed) and move forward. Last year Robert started the year in a class of 12 students to one teacher. As Winston Prep had an extra teacher, on October 30, 2006 this class was divided into two classes of 6 students to one teacher. This change was made in order to more closely tailor the instruction to the students' individual needs. I have prepared a memorandum which explains how the MS 1 class remediates Robert's deficits. It is marked Exhibit BB on Plaintiff's Exhibit List.

12.    On April 24, 2006 when Robert was interviewed for admission to Winston he was given a number of tests. He was tested again in May 2007. The following table shows the results of the testing:

|  | 2006 | 2007 |
|---|---|---|
| Woodcock Johnson (Word attack) Grade Equivalent. | 2.6 | 2.4 |
| Woodcock Johnson (LW-ID) | 3.8 | 4.2 |
| TOWL | | |
| Contextual Conventions-Percentile | 9th | 25th |
| Contex Language | 9th | 25th |
| Story Construction | 37th | 50th |

These test results demonstrate that Robert has made significant progress in all areas except "Word Attack."

13.    Winston Preparatory School prepared and sent to Robert's parent the following reports which are designated as exhibits V, W, X and Z, respectively in the index

of documents attached to the notice of motion is this matter:  Exhibit V Winston Preparatory School 2006 Fall Report; Exhibit W Winston Preparatory School Winter 2007 Report; Exhibit X Winston Preparatory School Fall 2007 report; Exhibit Z Winston Preparatory School Report Card 2006-2007.  Based on these reports and my personal observation of Robert, in my professional opinion, Winston is an appropriate placement for Robert now and was an appropriate placement for Robert during the 2006-2007 school year.

Dated:  New York, NY   December 6, 2007

_____
SUSAN FELDMAN

Sworn to before me this
6th day of December, 2007

_____
Notary Public

**WARREN J. SINSHEIMER**
Notary Public, State of New York
No. 02SI6038060
Qualified in Westchester County
Commission Expires March 20, 20___

4