UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————X

G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant.,                                        No. 07 CV 4711 (TPG)

                              Plaintiff,

              -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                              Defendant.
——————————————————————X

PLAINTIFF'S OPPOSITION AND
REPLY MEMORANDUM OF LAW

PARTNERSHIP FOR CHILDREN'S RIGHTS
WARREN J. SINSHEIMER (WJS 9906)
MICHAEL D. HAMPDEN (MDH 2359),
        of Counsel
Attorneys for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 222

ERIN MCCORMACK, ESQ.
        on the Memorandum of Law

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                    1

ARGUMENT                                                                 1

## POINT I                                                               1

SECOND CIRCUIT LAW FULLY SUPPORTS PLAINTIFF'S
REQUEST TO AUGMENT THE RECORD WITH ADDITIONAL
EVIDENCE OF ROBERT'S PERFORMANCE AND PROGRESS
AT WINSTON PREPARATORY SCHOOL (WPS).

## POINT II                                                              9

PLAINTIFF HAS SATISFIED HER BURDEN OF PROVING
THAT WPS WAS AN APPROPRIATE PLACEMENT FOR
ROBERT DURING THE 2006–2007 SCHOOL YEAR

## POINT III                                                            14

THE DISMISSAL OF PLAINTIFF'S CLAIM FOR TUITION
PAYMENT WITHOUT PREJUDICE WAS AN APPROPRIATE
EXERCISE OF THE IHO'S DISCRETION UNDER BOTH
THE IDEA AND NEW YORK STATE LAW.

A.    It Was Within the IHO's Authority to Dismiss              15
      Plaintiff's Claim Without Prejudice.

B.    The IDEA's Two-Year Statute of Limitations               17
      Ensures That the Adjudication of Plaintiff's
      Claims Will Not Continue Indefinitely.

C.    The New York State Procedural Law Cited                   18
      by Plaintiff Is Highly Relevant in the Context of This Case.

CONCLUSION                                                              20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————X

G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant.,                                    **No. 07 CV 4711 (TPG)**

                              Plaintiff,          **PLAINTIFF'S OPPOSITION AND
                                                   REPLY MEMORANDUM OF LAW**

          -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                              Defendant.

——————————————————————X

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law, pursuant to Local Rule 7.1, in opposition to

Defendant's Cross-Motion for Summary Judgment and in reply to Defendant's Memorandum of

Law in Opposition to Plaintiff's Motion for Summary Judgment (Defendant's Memorandum or

Def. Mem.).

## ARGUMENT

### POINT I

**SECOND CIRCUIT LAW FULLY SUPPORTS PLAINTIFF'S
REQUEST TO AUGMENT THE RECORD WITH ADDITIONAL
EVIDENCE OF ROBERT'S PERFORMANCE AND PROGRESS
AT WINSTON PREPARATORY SCHOOL (WPS).**

The Individuals with Disabilities Education Improvement Act of 2004 (IDEA) expressly

provides that courts reviewing final administrative decisions in IDEA cases "shall hear additional

evidence at the request of a party." 20 U.S.C.A. § 1415(i)(2)(C)(ii) (Supp. 2005).

Notwithstanding this explicit authorization, the Department of Education (DOE) urges this Court

to refuse to consider the additional evidence submitted with Plaintiff's Motion for Summary Judgment. Def. Mem. at 5–6, 17–20. The DOE's position is insupportable and without merit, and we respectfully submit that it should be rejected by this Court.

While the Second Circuit Court of Appeals has not created a specific standard for the admissibility of additional evidence, it has consistently treated the district court's right to receive additional evidence as a centerpiece of the decision-making process in IDEA cases. See Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122–23 (2d Cir. 1998) (district court's decision must rest on "preponderance of the evidence developed at administrative proceedings and any further evidence presented by the parties"); Sherman v. Mamaroneck Union Free Sch. Dist., 340 F.3d 87, 93 (2d Cir. 2003) (same, citing Walczak); M.S. v. Bd. of Educ., 231 F.3d 96, 102 (2d Cir. 2000), cert. den., 532 U.S. 942 (2001) (same, citing Walczak); Briggs v. Bd. of Educ., 882 F.2d 688, 691 (2d Cir. 1989) ("The parties declined to present any additional evidence that had not been presented to the hearing officer, although they could have done so pursuant to [the IDEA].").

The recent Second Circuit Court of Appeals decision in Frank G. v. Board of Education, 459 F.3d 356 (2d Cir. 2006), cert. den., 128 S.Ct. 436 (2007), demonstrates the Court's receptiveness to augmentation of the record with additional evidence in IDEA cases. In Frank G., the parent unilaterally enrolled her son in a private school and sought tuition reimbursement in an impartial hearing. Id. at 361. There, as here, the school district conceded that it did not provide the student with a free appropriate public education (FAPE) for the school year in question. Id.

In Frank G., the Impartial Hearing Officer (IHO) reviewed the student's performance in the private school setting during the first and second quarters of the 2001–2002 school year. The

IHO ordered the school district to provide a one-to-one classroom aide and other services for the student at the private school, but denied tuition reimbursement to the parent. Id. Both parties appealed to the State Review Officer (SRO), who affirmed the IHO's denial of tuition reimbursement. Like the IHO, the SRO considered evidence of the student's performance only during the first and second quarters of the school year. Id. at 361–62.

The parents brought suit in this Court, seeking tuition reimbursement for the 2001–2002 school year. Judge Charles L. Brieant, in a bench trial, ruled for the parents, relying on additional evidence adduced at trial, and the school district appealed. Id. at 362. In its decision, the Second Circuit wrote:

> Although mindful that a district court should defer to an SRO's educational experience, Judge Brieant emphasized that his decision was "not based solely on the evidence before the SRO," but was informed by additional evidence of Anthony's progress, including testimony of Anthony's social and behavioral development, his Stanford Achievement Test results, and his year-end grades.

Id. The Court affirmed Judge Brieant's award of tuition reimbursement, specifically approving the district court's acceptance of additional evidence of the student's academic performance in the third and fourth quarters of the school year. The Court explained:

> If Judge Brieant had reached the opposite conclusion based on the same record, we would likely not affirm that decision because "[a]n assessment of educational progress is a type of judgment for which the district court should defer to the SRO's educational experience, particularly where . . . the district court's decision was based solely on the record that was before the SRO." Judge Brieant, however, was able to rely on evidence that was not available to the SRO to conclude that Anthony had made significant progress. This progress, viewed together with small class size and the program offered at Upton Lake, is sufficient to support Judge Brieant's judgement that Anthony received an education "reasonably calculated to enable the child to receive educational benefits."

Id. at 367 (alteration in original) (citations omitted).

Like Frank G., this is an action in which the addition of supplemental evidence to the record is appropriate. The additional evidence Plaintiff has submitted could not reasonably have

been introduced at the impartial hearing, and it addresses an important issue in this case—Robert's performance and progress during the 2006–2007 school year. See id. at 364 ("Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit . . . .").

District courts in this Circuit have been equally receptive to accepting evidence post-dating the administrative proceedings, offered by a party to demonstrate a student's progress in the current educational setting. See, e.g., Warton v. New Fairfield Bd. of Educ., 217 F. Supp. 2d 261, 277 (D. Conn. 2002) ("[P]laintiff's additional evidence, including his teacher evaluations replete with praise of his academic and social success in the mainstream classroom with appropriate supports and aids, underlines that plaintiff benefited in this placement beyond expectations set by the School Board or by the hearing officer."); Mavis v. Sobol, 839 F. Supp. 968, 980 (N.D.N.Y. 1994) ("Supplementing the record here will . . . serve to 'bring the court up to date' on Emily's progress since both the due process hearing and the time when these motions were argued. Only by allowing the record to be supplemented will the court have a complete picture as to Emily's educational status."); Jean N. v. Tirozzi, 17 EHLR 580 (D. Conn. 1991) (four educational evaluators who had testified at impartial hearing were permitted by court to update their testimony as to student's progress subsequent to conclusion of administrative proceedings).

In spite of this abundance of Second Circuit precedent evidencing a receptivity to accepting additional evidence in IDEA cases, the DOE asserts that a "rebuttable presumption" should be applied against it in this case. Def. Mem. at 17. The DOE premises this assertion on

the First Circuit Court of Appeals decision in <u>Burlington v. Department of Education</u>, 736 F.2d

733 (1st Cir. 1984), <u>aff'd</u>, 471 U.S. 359,[1] a decision that has never been adopted by this Circuit.

    As an initial matter, the DOE inaccurately characterizes the <u>Burlington</u> standard as "a

restrictive approach" to the admission of additional evidence.  Def. Mem. at 5, 17.  In fact,

<u>Burlington</u> is considered to be within the "intermediate category" among those circuits that have

adopted criteria for admission of supplemental evidence.  <u>See</u> Andriy Krahmal et al., <u>Additional</u>

<u>Evidence Under the Individuals with Disabilities Education Act:  The Need for Rigor</u>, 9 Tex. J.

of C.L. & C.R. 201, 211–13 (2004); <u>see also</u> <u>id.</u> at 213–14 (finding that decisions in First,

Second, and Third Circuits are more lenient, while others in First and Eighth Circuits are stricter,

than intermediate standard adopted in <u>Burlington</u>).

    In any event, while <u>Burlington</u> is not controlling in this Court, application of the First

Circuit's <u>Burlington</u> guidelines would lead to the conclusion that Plaintiff's additional evidence

should be admitted to this record.  As the <u>Burlington</u> court explained, "A trial court must make

an independent ruling based on the preponderance of the evidence, but the Act contemplates that

the source of the evidence generally will be the administrative hearing record, with some

supplementation at trial."  736 F.2d at 790 (footnote omitted).  Additional evidence means

supplemental evidence—evidence that is not repetitive or cumulative.  <u>Id.</u>  "In determining

whether additional evidence should be received, the [district] court starts with the record of the

administrative proceedings.  From there on, the question of the admission of evidence is for the

discretion of the district court within the guidelines set forth."  <u>Id.</u> at 802.

---

[1] The U.S. Supreme Court, in affirming the First Circuit's <u>Burlington</u> decision, did not address the issue of additional evidence.  <u>See</u> <u>Burlington v. Dep't of Educ.</u>, 471 U.S. 359, 367 (1985) ("We granted certiorari only to consider the following two issues:  whether the potential relief available under § 1415(e)(2) includes reimbursement to parents for private school tuition and related expenses, and whether § 1415(e)(3) bars such reimbursement to parents who reject a proposed IEP and place a child in a private school without the consent of local school authorities.  We express no opinion on any of the many other views stated by the Court of Appeals." (citation omitted)).

"The reasons for supplementation will vary," the Burlington court held, and additional evidence may include "evidence concerning relevant events occurring subsequent to he administrative hearing." Id. at 790. This type of additional evidence includes evidence of a student's progress in a unilateral private placement after the date of the impartial hearing. The Burlington court, showing sensitivity to the real objectives of the due process appeal procedures guaranteed by the IDEA, explained:

> **We decline to adopt the rule urged by [the state DOE] that the appropriate construction is to disallow testimony from all who did, or could have, testified before the administrative hearing.** We believe that, although an appropriate limit in many cases, a rigid rule to this effect would unduly limit a court's discretion and constrict its ability to form the independent judgment Congress expressly directed. . . . Our review of the cases involving the Act reveals that in many instances the district court found expert testimony helpful in illuminating the nature of the controversy and relied on it in its decisional process. There could be some valid reasons for not presenting some or all expert testimony before the state agency. Experts are expensive – the parties at the state level may feel that their cases can be adequately made with less backup, especially since the administrative hearing in Massachusetts is conducted by an expert. **We also recognize that in many instances experts who have testified at the administrative hearing will be bringing the court up to date on the child's progress from the time of the hearing to the trial. It would be difficult to draw a sharp line between what had or could have been testified to at the administrative hearing and the trial testimony.**

736 F.2d at 790–91 (emphasis added) (footnote omitted). Thus, even under Burlington, consideration of Plaintiff's additional evidence—which updates the Court on Robert's progress at WPS from the time of the impartial hearing until the end of the 2006–2007 school year—is appropriate.

The DOE complains that Plaintiff could have offered additional evidence at the SRO review stage. Def. Mem. at 19. In fact, Plaintiff proffered one additional exhibit with her SRO appeal papers—a "Progress Update" from WPS. See Exh. M at 15. In SRO appeals procedure, the introduction of new evidence is strictly circumscribed. It may not be considered unless the

SRO requests it, 8 N.Y.C.R.R. § 279.10(b) (2007), or determines that it "could not have been offered at the time of the hearing" and is "necessary in order to render a decision," Application of a Child with a Disability, Appeal No. 06-046. The SRO refused to consider Plaintiff's proffered exhibit on the grounds that it was not necessary for him to render a decision and the DOE objected to its acceptance. Exh. O at 5–6.

The DOE's objections to specific exhibits proffered by Plaintiff also are without merit. The DOE asserts that Exhibit AA is duplicative of evidence presented at the hearing. Def. Mem. at 18. This exhibit was not available at the time of the impartial hearing (it post-dates the hearing by over a year), and it affirms that Plaintiff has a legally enforceable obligation to pay the WPS tuition.

The DOE contends that other evidence "could have been made available at the time of the underlying hearing." Def. Mem. at 18. All of the exhibits cited by the DOE post-date the impartial hearing and in the main demonstrate Robert's performance and progress at WPS— evidence that Second Circuit precedent clearly allows. For example, Exhibit V—WPS's "Fall 2006 Report"—discusses the entire fall curriculum and describes all seven of Robert's WPS classes. It is idle speculation for the DOE to allege that this document could have been made available for the October 4, 2006 hearing. In any event, even Burlington, upon which the DOE principally rests its objection to Plaintiff's additional evidence, held that such evidence is not foreclosed merely because it might have been introduced at the hearing. 736 F.2d at 790.

Exhibit BB, dated November 28, 2007, also did not exist at the time of the impartial hearing. This report describes Robert's speech and language needs and the strategies employed by WPS to meet those needs. It is an integral adjunct to the affidavit of WPS educator Susan Feldman, annexed to Plaintiff's Notice of Motion. See Feldman Aff. ¶ 11.

Plaintiff respectfully submits that it would be an abuse of the district court's discretion to decline to accept additional evidence if that evidence is necessary for the court to reach the "independent decision[] based on a preponderance of the evidence" required by the IDEA. Bd. of Educ. v. Rowley, 458 U.S. 176, 205 (1982) (quoting S. Conf. Rep. No. 94-455, at 50 (1975)); see also Mr. X v. N.Y. State Educ. Dep't, 975 F. Supp. 546, 555 (S.D.N.Y. 1997) ("[T]he court has reviewed the administrative record together with additional evidence in the matter now before it and has made an independent judgment based on a preponderance of evidence, giving due weight to the administrative proceedings.").

In Reid v. District of Columbia, 401 F.3d 516, 526 (D.C. Cir. 2005), the D.C. Circuit Court of Appeals observed that where the administrative record lacks necessary evidence for proper findings as to the parent's claims, the district court has two alternative courses: It may accept the additional evidence necessary to assess the case thoroughly and reach a decision on the merits, or it can remand for an additional impartial hearing where that evidence can be developed and a substantive decision reached. In Reid, the Court of Appeals remanded to the district court, stating:

> On remand, the district court may solicit additional evidence from the parties and fashion an appropriate compensatory education award based on the principles outlined in this opinion. Alternatively, in light of the absence of pertinent findings in the administrative record and given that both parties previously filed cross-motions for summary judgment rather than exercising their right to "request" consideration of additional evidence, the district court may determine that the "appropriate" relief is a remand to the hearing officer for further proceedings. Whichever path the court chooses, the parties must have some opportunity to present evidence regarding [the student's] specific educational deficits resulting from his loss of FAPE and the specific compensatory measures needed to best correct those deficits.

401 F.3d at 526 (citations omitted). Plaintiff, in her Notice of Motion, outlined precisely the two alternative paths discussed in Reid: The Court should either receive the supplementary evidence

and decide the case on its merits, or remand for an additional impartial hearing at which Robert's performance at WPS can be addressed (as the IHO intended in this case).

The DOE's main objection to this Court's consideration of additional evidence—that Plaintiff "has made no argument to rebut the presumption against accepting it," Def. Mem. at 19—erroneously assumes that there actually is a Second Circuit presumption against additional evidence. There is no such presumption, as the pertinent Second Circuit decisions in <u>Frank G.</u>, <u>Walczak</u>, <u>Sherman</u>, <u>M.S.</u>, and <u>Briggs</u> make clear. Even if there were, Plaintiff would overcome it, because her proffered evidence speaks to the progress Robert made at WPS, and the manner in which WPS met his special education needs, subsequent to the impartial hearing.

Plaintiff respectfully requests that the district court exercise its discretion to accept the relevant, competent, and non-duplicative evidence she has submitted. When this is done, there is no danger that additional evidence proffered by Plaintiff will "change the character of the hearing from one of review to a trial *de novo*." <u>Burlington</u>, 736 F.2d at 791.

## POINT II

### PLAINTIFF HAS SATISFIED HER BURDEN OF PROVING THAT WPS WAS AN APPROPRIATE PLACEMENT FOR ROBERT DURING THE 2006–2007 SCHOOL YEAR

At the impartial hearing, Plaintiff demonstrated that WPS's academic program was designed to meet Robert's special education needs and reasonably calculated to provide him with educational benefits, satisfying her prong-two burden under <u>School Committee of Burlington v. Department of Education</u>, 471 U.S. 359 (1985).[2]   In Defendant's Memorandum, the DOE

---

[2] Under <u>Burlington</u>, a board of education may be required to pay for educational services obtained by a parent for his or her child if:  (1) the services offered by the board were inadequate or inappropriate; (2) the services obtained by the parent were appropriate; and (3) equitable considerations support the parent's claim.  471 U.S. at 370, 374; <u>see also</u> <u>Frank G. v. Bd. of Educ.</u>, 459 F.3d 356, 364 (2d Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 436 (2007) ("[T]he issue turns on whether a placement—public or private—is 'reasonably calculated to enable the

disputes this, asserting that Plaintiff's impartial hearing evidence was "insufficient" to satisfy her prong-two burden and that the IHO and SRO were correct to deny Plaintiff's claim for tuition payment. Def. Mem. at 16. This assertion is not supported by the record and, we respectfully submit, is fully refuted in Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's Memorandum" or "Pl. Mem."). See Pl. Mem. at 6–14. For the sake of economy, we refer the Court to Point II.B of Plaintiff's Memorandum and will not repeat the arguments contained therein.

Turning to the additional evidence submitted by Plaintiff with her Motion for Summary Judgment, the DOE asserts that Robert's progress reports and standardized test results from WPS (Exhibits V–Z) "should not be considered" because "any progress achieved after the unilateral placement of the Student at WPS does not, by itself, demonstrate the appropriateness of that school's program." Def. Mem. at 19. According to the DOE, this Court should determine "whether WPS, 'at the time the placement decision was made,' was reasonably calculated to enable the student to receive educational benefits," id. (quoting Viola v. Arlington Cent. Sch. Dist., 414 F. Supp. 2d 366, 382 (S.D.N.Y. 2006)), and should not take into account evidence of Robert's progress at WPS during the 2006–2007 school year.

This argument fails on both logic and the law. First, the fact that evidence of progress in a unilateral private placement is not by itself *sufficient* to demonstrate the appropriateness of that placement does not mean that such evidence is *irrelevant* in assessing the placement's appropriateness. The Second Circuit Court of Appeals has made this distinction clear, holding that evidence of progress is relevant, though not dispositive, on the issue of the appropriateness of a unilateral private placement. See Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 115

---

child to receive educational benefits.'" (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982)); C.B. v. New York City Department of Education, No. 02 CV 4620(CLP), 2005 WL 1388964, at *24 (E.D.N.Y. June 10, 2005) ("The IDEA does not require the parents to provide an 'ideal program,' just an 'appropriate' one.").

(2d Cir. 2007) (stating that student's progress in private placement "does not itself demonstrate that a private placement was appropriate," but that such progress "is *relevant* to the court's review" (emphasis added)); Frank G. v. Bd. of Educ., 459 F.3d 356, 364 (2d Cir. 2006), cert. denied, 128 S. Ct. 436 (2007) (providing that "courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs" and that "[g]rades, test scores, and regular advancement *may constitute evidence* that a child is receiving educational benefit" (emphasis added)); id. at 366 (holding that student's social and academic progress supported appropriateness of private placement).

The district court cases cited by the DOE, Def. Mem. at 19–20, provide wholly inadequate legal support for its assertion that this Court should not consider evidence of Robert's progress at WPS. First, both of these cases—Viola and C.B. v. New York City Department of Education, No. 02 CV 4620(CLP), 2005 WL 1388964 (E.D.N.Y. June 10, 2005)—were decided before the Court of Appeals issued its opinions in Frank G. and Gagliardo. Thus, to the extent that these cases adopted a legal standard different than that set forth in Frank G. and Gagliardo, they must be deemed overruled. Moreover, Viola did not address the standard for assessing the appropriateness of a unilateral private placement. Rather, Viola held that evidence of a student's progress in a unilateral private placement is irrelevant to determining whether the school district proposed an appropriate program in its Individualized Education Program (IEP). See 414 F. Sup. 2d at 382 & n.11. This is an entirely different issue from the one presented in this case, and thus, even absent the Court of Appeals decisions in Frank G. and Gagliardo, Viola would not apply.

The DOE next contends that, even if the Court considers all of the additional evidence submitted by Plaintiff, it should still find that Plaintiff has not satisfied her burden of proving that WPS was an appropriate placement for Robert. Def. Mem. at 20–21. Specifically, the DOE claims that Robert's grades are "underwhelming" and "do not support the contention that [he] made progress at WPS during the 2006-2007 school year." Id. at 21. To the contrary, Robert passed all of his classes, and passing grades are considered a sign that a student has received meaningful educational benefits. See Walczak v. Fl. Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir. 1998) ("[W]hen a disabled child is in a mainstream class . . . , the attainment of passing grades and regular advancement from grade to grade are generally accepted indicators of satisfactory progress. Nevertheless, this court has looked to test scores and similar objective criteria even in cases where a disabled child has been educated in self-contained special education classes." (citation omitted)); B.L. v. New Britain Bd. of Educ., 394 F. Supp. 2d 522, 534 (D. Conn. 2005) ("Factors such as the attainment of passing grades and regular advancement from grade to grade are generally accepted indicators of satisfactory progress. This is true even when the student has been educated in special education classes." (citations omitted) (citing Walczak)); see also Sherman v. Mamaroneck Union Free Sch. Dist., 340 F.3d 87, 93 (2d Cir. 2003) (holding that even "failing grades are not dispositive" evidence that student has been denied educational benefit).

Moreover, Robert's report card is not the only evidence that he made progress at WPS during the 2006–2007 school year. As discussed in detail in Plaintiff's memorandum, Robert's WPS progress reports and standardized test reports—both those prepared by WPS and those prepared by the DOE—demonstrate that Robert derived meaningful educational benefit from WPS's educational program, and particularly from his placement in a small class setting and

receipt of daily, one-to-one instruction through the school's Focus program. See Pl. Mem. at 14–16.

Finally, the DOE asserts that Plaintiff "has not offered a sustainable explanation for why WPS discontinued the Student's speech and language therapy." Def. Mem. at 20. The DOE's use of the term "discontinued" here is curious, as Plaintiff did not remove Robert from a public school offering speech and language therapy (or reject such a placement) in favor of placing him in WPS. In fact, Plaintiff was forced to choose between a unilateral private placement and *nothing* because the DOE, concededly, *did not offer Robert a placement for the 2006–2007 school year*. Def. Mem. at 14. This is a factor that should not be overlooked in assessing the appropriateness of Robert's placement at WPS. See C.B., 2005 WL 1388964, at *25 (finding that unilateral private placement "was certainly appropriate given the Board's failure to provide [the student] a free and appropriate education" even though that placement did not offer "integrated ABA program . . . [that] might have proven more successful" for student).

Further, the evidence in the administrative record, as well as the additional evidence submitted by Plaintiff, establishes that WPS provided Robert with an intensive, integrated program that was designed to address his speech and language needs and from which he derived meaningful benefit. See Pl. Mem. at 6–10, 14–16. That is all Plaintiff was required to show in order to satisfy her burden under the second Burlington prong: Having demonstrated that Robert's speech and language needs were being met at WPS, she was not required to explain why WPS chose to address those needs in a manner different than that contemplated by the DOE's year-old IEP. Contrary to the DOE's contention, a private school is not required to provide the precise services specified on a student's IEP in order to be found appropriate under Burlington. See Frank G., 459 F.3d at 365 ("[P]arents need not show that a private placement

13

furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides 'educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.'" (quoting Rowley, 458 U.S. at 188–89) (citation omitted)); Gabel v. Bd. of Educ., 368 F. Supp. 2d 313, 327 (S.D.N.Y. 2005) (finding unilateral private placement appropriate even though school did not provide student with speech-language therapy and occupational therapy listed on school district's IEP, as evidence showed that student "made substantial progress in her speech and language skills").

Both at the impartial hearing and through the additional evidence submitted to this Court, Plaintiff satisfied her burden of proving that WPS was an appropriate placement for Robert during the 2006–2007 school year. The DOE's assertions to the contrary are supported by neither the evidence nor the law, and we respectfully submit that they should be rejected by this Court.

## POINT III

### THE DISMISSAL OF PLAINTIFF'S CLAIM FOR TUITION PAYMENT WITHOUT PREJUDICE WAS AN APPROPRIATE EXERCISE OF THE IHO'S DISCRETION UNDER BOTH THE IDEA AND NEW YORK STATE LAW.

Neither the IDEA nor it implementing federal and state regulations explicitly permits or prohibits the dismissal without prejudice of claims raised in a parent's impartial hearing request. The DOE does not dispute this point, and in fact concedes that IHOs have the power to dismiss a parent's due process complaint without prejudice under certain circumstances. Def. Mem. at 12. However, the DOE asserts: (1) it was "beyond the scope of IHO Kramer's powers" to dismiss Plaintiff's claim for tuition payment without prejudice, id. at 7, and her decision was on the

14

merits "by operation of law," id. at 11; (2) dismissing Plaintiff's claim without prejudice extended the adjudication of that claim "indefinitely," id. at 12; and (3) New York State law on dismissals without prejudice is "inapposite" to Plaintiff's case, id.  These assertions are supported by neither logic nor the law and should be rejected.

**A.    It Was Within the IHO's Authority to Dismiss Plaintiff's Claim Without Prejudice.**

First, the DOE asserts that IHO Kramer went beyond the scope of her powers in dismissing Plaintiff's claim for tuition payment without prejudice, and that her decision was on the merits "by operation of law." Def. Mem. at 7–8, 11. Citing § 1415(f)(3)(E)(i) of the IDEA and § 300.513(a) of the federal regulations, the DOE asserts that: (1) the IDEA requires IHOs to render decisions on substantive grounds; (2) an adjudication on the merits is a decision based on substantive grounds; and therefore (3) IHO decisions are adjudications on the merits that are, "by operation of law," rendered with prejudice. Id. at 8–10. This argument is fallacious, as it conflates "substantive" FAPE determinations with "substantive" dismissals with prejudice.

Section 300.513(a) of the federal IDEA regulations provides that, as a general matter, "a hearing officer's determination of whether a child received FAPE must be based on substantive grounds." 34 C.F.R. § 300.513(a) (2007). The term "substantive" in this provision is used to describe the type of IDEA violations upon which an IHO may base a finding that a student has been denied a FAPE. It describes the appropriate *grounds for FAPE determinations* (procedural versus substantive), not the *type of decision* an IHO must render on an IDEA claim (on the merits and with prejudice versus not on the merits and without prejudice).

This is abundantly clear from the language of § 300.513(a)'s corresponding IDEA provision:

15

In matters alleging a *procedural violation*, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—

    (I)    impeded the child's right to a free appropriate public education;

    (II)    significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or

    (III)    caused a deprivation of educational benefits.

20 U.S.C.A § 1415(f)(3)(E)(i) (Supp. 2005) (emphasis added). And the U.S. Department of Education's comments on § 300.513(a) explicitly state: "Hearing officers continue to have the discretion to dismiss complaints and to make rulings on matters in addition to those concerning the provision of FAPE . . . ." See Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children with Disabilities; Final Rule, 71 Fed. Reg. 46,707 (Aug. 14, 2006).

Neither of these provisions speaks to an IHO's authority to dismiss due process complaints without prejudice. The fact that FAPE determinations must be premised on substantive (not purely procedural) violations of the IDEA does not mean that IDEA claims must always be disposed of on substantive (merits-based) grounds. To conclude otherwise, as the DOE does, is to conflate the meaning of "substantive" in these two distinct contexts.

Sections 1415(f)(3)(E)(i) of the IDEA and 300.510(b)(4) of the federal regulations simply provide an analytical framework for determining whether the IDEA's core guarantee has been met—i.e., whether a disabled child has been offered or denied a FAPE. These provisions do not in any way circumscribe the authority of an IHO to dismiss a parent's IDEA claim without prejudice and, as such, provide no basis for concluding that IHO Kramer's decision effected a with-prejudice dismissal "by operation of law."

**B.**    **The IDEA's Two-Year Statute of Limitations Ensures That the Adjudication of Plaintiff's Claims Will Not Continue Indefinitely.**

Next, the DOE argues that "[g]ranting plaintiff leave to refile her claim at some undetermined point in the future extends the adjudication of these claims indefinitely" and "make[s] a timely determination of these claims impossible." Def. Mem. at 12. This is plainly inaccurate, as the IDEA imposes a two-year statute of limitations on the filing of due process complaints. 20 U.S.C.A. § 1415(f)(3)(C) (Supp. 2005) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows."); 8 N.Y.C.R.R. § 200.5(j)(1)(i) (2007) (providing that "request for an impartial due process hearing must be submitted within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint" unless specific exceptions apply).

Had IHO Kramer's decision been allowed to stand, the deadline for Plaintiff to refile her due process complaint would have been no later than September 2008—two years after the onset of the DOE's denial of FAPE for the 2006–2007 school year. In fact, Plaintiff refiled her due process complaint on October 27, 2006—four days after IHO Kramer issued her decision. See Exh. P. As such, the IHO's decision hardly subjected the DOE to an "indefinite" extension of time for the adjudication of Plaintiff's claims regarding the 2006–2007 school year. Compare Thomas v. District of Columbia, 407 F. Supp. 2d 102, 114–15 (D.D.C. 2005) (holding that there was no res judicata effect where prior IHO decisions expressly preserved parent's IDEA claim for future proceeding *and* insulated that claim from statute of limitations defense).

17

C.     **The New York State Procedural Law Cited by Plaintiff Is Highly Relevant in the Context of This Case.**

Finally, the DOE argues that the New York State procedural law cited by Plaintiff is "inapposite" in the context of this case. Def. Mem. at 12. It is significant to note that the DOE does not dispute that IHOs are afforded discretion to conduct hearings in accordance with appropriate, standard legal practice, or that appropriate, standard legal practice is a matter of State law. Nor does the DOE dispute that, under New York State law, it is appropriate for a court to dismiss a plaintiff's claim without prejudice where the plaintiff failed to meet its evidentiary burden, but the claim appears to be meritorious and the proof plaintiff needs is likely to become available in the future. Compare Pl. Mem. at 21–23 with Def. Mem. at 12–14. Rather, the DOE asserts that this case "is very unlike the situation in the cases cited by plaintiff where the court made no substantive determination concerning any evidence presented to it." Def. Mem. at 12.

This is a gross mischaracterization of the cases cited by Plaintiff. In Raine v. Paramount Pictures Corporation, No. 97 Civ. 3553 DLC, 1998 WL 655545 (S.D.N.Y. Sept. 24, 1998), this Court held that there was no res judicata effect where, in a prior proceeding in New York State Supreme Court, the plaintiff's claim was dismissed without prejudice for failure to present a prima facie case. Id. at * 2, 7–8. That without-prejudice dismissal was rendered *after* the close of the plaintiff's case and was premised upon a finding that the plaintiff "failed in several respects to adduce the evidence necessary to establish [the defendant's] liability." Id. at *2. As this Court explained, the dismissal was "based on [the New York State Supreme Court Justice's] own *evidentiary findings* at a specific juncture in those proceedings." Id. at *8 (emphasis added). Thus, there is absolutely no support for the DOE's contentions that the without-prejudice dismissal in Raine "included no findings of fact or conclusions of law," Def. Mem. at 13, and

18

that the court "made no substantive determination concerning any evidence presented to it," id. at 12.

Many other cases cited by Plaintiff also involved dismissals without prejudice rendered after the close of the plaintiff's evidence and premised upon a "substantive" evidentiary determination that the plaintiff failed to establish a prima facie case. See Raine v. Viacom Int'l Inc., 638 N.Y.S.2d 81, 82 (N.Y. App. Div., 1st Dep't 1996) (holding that action for film royalties premised on trust agreement "was properly dismissed at the close of plaintiff's case because plaintiff failed to offer sufficient proof that any of the films in question were specifically covered under the Trust Agreement"); Lewis v. Barsuk, 389 N.Y.S.2d 952, 953 (N.Y. App. Div., 4th Dep't 1976) (reversing jury verdict in plaintiff contractor's favor on ground that plaintiff failed to sustain burden of proof on all five causes of action, but granting new trial because "proof necessary to sustain each cause of action [wa]s available to plaintiff"); Champion Int'l Corp. v. Dependable Indus. Corp., 367 N.Y.S.2d 273, 275 (N.Y. App. Div., 1st Dep't 1975) (holding that dismissal of plaintiff's action against co-defendant—premised upon fact that plaintiff rested its case without introducing evidence of co-defendant's guarantee of corporate defendant's debts to plaintiff—should have been made without prejudice because it "clearly appear[ed]" that such evidence was available to plaintiff); Roland v. Hubbard, 318 N.Y.S.2d 644, 644 (N.Y. App. Div., 1st Dep't 1971) (holding that evidence introduced by plaintiff at trial failed to establish prima facie case, but that trial court's dismissal of plaintiff's claim should have been made without prejudice so as to allow plaintiff to "endeavor to procure and present the necessary evidence if available"); Giglio v. Haber, 243 N.Y.S.2d 539, 539 (N.Y. App. Div., 2d Dep't 1963) (holding that trial court's dismissal of complaint at close of plaintiff's case should have been made without prejudice because "[u]nder all the circumstances disclosed in the record, it appear[ed]

that proof [wa]s available to plaintiff which w[ould] readily enable him to establish a prima facie case").

As in these cases, Plaintiff's claim was dismissed without prejudice to afford her an opportunity to present proof that was both likely to become available to her in the future and capable of rendering her claim meritorious. Consequently, these cases are factually analogous to Plaintiff's case, and the DOE's argument that they are "inapposite" should be rejected.


## CONCLUSION

For these reasons, and those set forth in Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, we respectfully request that the Court overturn the SRO's decision and order the DOE to pay Robert's tuition at WPS for the 2006–2007 school year in the amount of $38,750.00.  In the alternative, we request that the Court either (1) authorize Plaintiff to pursue her claim for the 2006–2007 school year WPS tuition in a second impartial hearing; or (2) remand the case to the IHO to conduct further fact-finding on the issue of progress and reach a decision on the merits of Plaintiff's claim for payment of the WPS tuition.


Dated:  New York, New York
       February 6, 2008

PARTNERSHIP FOR CHILDREN'S RIGHTS
WARREN J. SINSHEIMER (WJS 9906)
MICHAEL D. HAMPDEN (MDH 2359),
    of Counsel
Attorneys for Plaintiff
271 Madison Avenue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 222

ERIN MCCORMACK, ESQ.
    on the Memorandum of Law

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
G.R., as Parent and Natural Guardian
o/b/o R.R., an Infant,

                                          Docket No.
                                          07 Civ. 4711 (TPG)

                 Plaintiff,

   -   v -

NEW YORK CITY DEPARTMENT
OF EDUCATION,
               Defendant.
-------------------------------------------------------X


       The undersigned hereby certifies under penalty of perjury that on the 6th day of
February, 2008 he emailed, and mailed via first class mail the attached Plaintiff's Reply
Memorandum of Law in this case to counsel for the defendant:

Andrew J. Rauchberg
Assistant Corporation Counsel
100 Church Street
New York, N.Y. 10007


Dated:       New York, New York
                February 6, 2008

                                         _____
                                       WARREN J. SINSHEIMER (WS 9906)
                                       MICHAEL D. HAMPDEN (MH 2359)
                                       Attorneys for Plaintiff
                                       PARTNERSHIP FOR CHILDREN'S RIGHTS
                                       271 Madison Avenue, 17th Floor
                                       New York, New York 10016
                                       212-683-7999, ext. 222and Plaintiff's Opposition